EXHIBIT 1

**JAMS ARBITRATION**
**NEW YORK, NEW YORK**

Adam Lieberman,

Claimant,

    **and**                                    **JAMS Ref. No. 1425025196**

Credit One Bank, N. A.,

Respondent.

## CORRECTED FINAL AWARD

### I.   Introduction

1.  <u>Parties and Counsel</u>: The parties to this arbitration are identified in the caption and are represented as follows:

    <u>Counsel for Claimant:</u>

    Ari H. Marcus, Esq.
    Marcus & Zelman, LLC
    1500 Allaire Avenue
    Asbury Park, New Jersey 07712
    Tel:  732 695-3282
    Fax:  732 298-6256
    Email: Ari@MarcusZelman.com

    Yitzchak Zelman, Esq.
    Marcus & Zelman, LLC
    1500 Allaire Avenue
    Asbury Park, New Jersey 07712
    Tel:  732 695-3282
    Fax:  732 298-6256
    Email: YZelman@MarcusZelman.com

Lori Hague, Esq.
Marcus & Zelman, LLC
1500 Allaire Avenue
Asbury Park, New Jersey 07712
Tel:   732 695-3282
Fax:   732 298-6256
Email: Lori@MarcusZelman.com

Counsel for Respondents:

Christopher R. Murphy, Esq.
Holland & Knight LLP
150 N. Riverside Plaza
Suite 2700
Chicago, Illinois 60606
Tel.:   312 715-5722
Fax:   312 578-6666
Email:   chris.murphy@hklaw.com

Travis A. Sabalewski, Esq.
Holland & Knight LLP
1650 Tysons Boulevard
Suite 1700
Tysons, Virginia 22102
Tel.:   703 720-8015
Fax:   703 720-8610
Email: travis.sabalewski@hklaw.com

Abraham J. Colman, Esq.
Holland & Knight LLP
400 South Hope Street
8th Floor
Los Angeles, California 90071
Tel: 213 896-2412
Fax:  213 896-2450
Email:  abe.colman@hklaw.com

2. JAMS Arbitrator:

   Hon. Ariel E. Belen (Ret.)
   JAMS
   620 Eighth Avenue
   34th Floor
   New York, New York 10018
   Tel: 212 751-2700
   Fax: 212 751-4099
   Email: abelen@jamsadr.com

3. JAMS Case Manager:

   Shakiya Wright-McDuffie
   JAMS
   620 Eighth Avenue
   34th Floor
   New York, New York 10018
   Tel.: 212 607-2761
   Fax: 212 751-4099
   Email: swrightmcduffie@jamsadr.com

This arbitration is brought pursuant to the "Arbitration Provision" clause in the "Credit One Bank Disclosures and Terms & Conditions for Credit One Bank's Credit Cards" attached to a certain "JAMS Demand for Arbitration Form", dated November 13, 2017, ("Demand for Arbitration").

The claims are set forth in a certain "Complaint for Violations of the Telephone Consumer Protection Act", dated November 13, 2017, and referenced in the abovementioned Demand for Arbitration. Respondent Credit One Bank, N.A., ("Respondent"), answered the Demand for Arbitration by submitting a certain "Respondent Credit One Bank, N.A.'s Answer and Affirmative Defenses to Claimant's Demand form Arbitration", dated May 14, 2018, ("Respondent's Answer"). Claimant Adam Lieberman, ("Claimant"), subsequently filed a certain "Amended Compliant for Violations of the Telephone Consumer Protection Act, Demand for Jury Trial", dated

3

March 13, 2019, ("Amended Complaint"). Respondent subsequently filed a certain "Credit One Bank N. A.'S Cross-Complaint Against Genese Lieberman for: 1. Breach of Contract; 2. Negligence; 3. Fraud; 4. Negligent Misrepresentation; and 5. Declaratory Relief and Indemnification", dated September 19, 2019, ("Respondent's Cross-Complaint"). Respondent then submitted a certain "Credit One Bank N. A.'S Counterclaim Against Adam Lieberman for: 1. Fraud; and 2. Declaratory Relief", dated December 12, 2019, ("Respondent's Counterclaim").

An arbitration hearing was conducted in this matter on January 22 and 23, 2020, at the New York offices of JAMS at which the sworn testimony of Adam Lieberman, Genese Lieberman, Jeffrey Meek, and Jeffrey Hansen was taken and transcribed. Jeffrey Hansen testified via videoconference.

On September 9, 2020, the undersigned issued a Corrected Interim Award that fully and finally resolved "all issues submitted for decision in this proceeding with the exception of the computation of Respondent's fees and costs incurred in connection with the arbitration of the dispute." (Section III, Corrected Interim Award). This Final Award adopts and republishes the Corrected Interim Award in its entirety and amends the Interim Award only as necessary to make certain ministerial and stylistic edits, and to integrate the arbitrator's subsequent decision regarding the Respondent's request for attorneys' fees, costs, and expenses. Section III of the Corrected Interim Award entitled Conclusion and Interim Award is not reproduced here for the sake of brevity, although the findings and legal conclusions contained in that section are adopted here in their entirety.

This Final Award is based upon a review of all the pleadings in this arbitration proceeding; Claimant's Pre-Hearing Submission with Exhibits, dated January 7, 2020;

4

Respondent's Pre-Hearing Submissions including Credit One's Statement of Position, dated January 6, 2020 and Respondent's Witness List, dated January 6, 2020; Respondent's Counter Designation of Deposition Testimony, dated February 11, 2020; Claimant's Post-Hearing Brief, dated March 17, 2020; Respondent's Post Hearing Brief, dated March 18, 2020; Respondent's email, dated April 6, 2020, submitting new case authorities; Claimant's emails, dated April 6, 2020 and April 7, 2020, in response to Respondent's April 6, 2020 email; Respondent's email, dated April 7, 2020, addressing Claimant's April 6, 2020 and April 7, 2020 emails; the transcripts of the arbitration hearing which reflect the sworn testimony of the testifying witnesses and the colloquy and arguments of counsel on various substantive and procedural issues; as well as all the exhibits submitted with the pre-hearing submissions and at the arbitration hearing; and the oral argument of counsel at a Zoom videoconference on June 3, 2020; Respondent's Credit One Bank N.A.'S Application for Attorneys' Fees, Costs, and Expenses, dated October 16, 2020, Claimant's Opposition to Respondent's Credit One Bank's Motion for Attorney's Fees and Costs, dated November 23, 2020; and Respondent's Credit One Bank N.A.'S Reply in Support of its Application for Attorneys' Fees, Costs, and Expenses, dated December 8, 2020; as well as all the exhibits submitted with these submissions.

This Final Award incorporates the findings of fact, legal analysis, and conclusions of law stated in the Corrected Interim Award. In addition, this Final Award contains the arbitrator's decision regarding the Respondent's request for attorney's fees, costs, and expenses. Therefore, in this Final Award, all arbitrable issues presented to the undersigned arbitrator in this arbitration have been fully and finally decided.

5

The undersigned arbitrator recognizes and appreciates the high quality of the presentations by counsel for each party. The result of this proceeding is not a reflection on any difference in the quality of those presentations, but of the arbitrator's review of the record.

The factual findings that follow are necessary to this Final Award. They are derived from the submissions filed by the parties and their oral argument. To the extent that these findings differ from any party's position, that is the result of weighing of the written evidence and the oral argument of counsel, including determinations by the arbitrator as to credibility and weight, as well as applications of burdens of proof and legal principles.

## II.  Analysis

Claimant brought this arbitration seeking statutory and enhanced damages under the Telephone Consumer Protection Act, 47 U.S.C. § 247 *et seq.*, ("TCPA"), for 611 calls placed by Respondent Credit One, N.A. after July 28, 2017, when he asserts that Respondent received his request to stop calling his cell phone number. It is undisputed that Respondent made these 611 calls, often as many as 10 times a day, as well as 239 previous calls to Claimant from June 8, 2017 to July 13, 2017, in an attempt to collect outstanding credit card debt.

Claimant contends that the calls made after July 28, 2017 violated the TCPA because they were autodialed calls made without the consent of the called party through the use of predictive dialers that constitute an automatic telephone dialing system ("ATDS") prohibited by the TCPA. In this connection, Claimant also asserts that Respondent's calls were by definition without consent since the Cardholder Agreement between Claimant and Respondent only allowed Claimant to contact Claimant for any "...lawful purpose." Moreover, according to Claimant, Respondent's repeated calls, sometimes as early as 6:00am, constituted unlawful harassment under New Jersey law in violation of N.J.S.A. 2C:33–4(a)(c). "When consumers

6

consent to calls for a 'lawful purpose', they are not consenting to being endlessly targeted by their credit card company until they finally succumb to whatever it is that the credit card company wants." (Claimant's Post-Hearing Brief, p. 5).

Respondent denies that it or its third party vendors used an ADTS violative of the TCPA to contact Claimant. Respondent contends that the evidence in this case established that all of the challenged calls in this case came from customer databases and lists and were not made from randomly or sequentially generated numbers in violation of the TCPA. Respondent also asserts that there is ample basis to question the reliability of Claimant's expert, if for no other reason than that he did not physically inspect the telephony dialing systems used by the third party vendors in this case. In addition, Respondent has counterclaimed against Claimant for fraud seeking declaratory relief and monetary damages. Respondent also cross-claimed against Claimant's spouse Genese Lieberman who is the actual cardholder seeking declaratory relief and indemnification.

Claimant's arguments are unavailing. Claimant is a resident of New Jersey. Under the prevailing law in the Court of Appeals for the Third Circuit, the TCPA claims asserted by Claimant for the calls made to his cellphone fail as a matter of law. There is no evidence in this case that Claimant received telephone calls from Credit One because his cellphone number was randomly or sequentially generated by Respondent's telephony systems. To the contrary, his cellphone number was obtained when he opened the subject credit card account on his wife's behalf and gave his cellphone number as the specific number to be called in relation to this account. The calls were made to him at his specific cellphone number attached to his wife's specific account about the specific debt owed under that account.

7

Although there appears to be a split among the circuit courts on the question of whether an ADTS that calls from a stored list constitutes an ADTS that violates the TCPA, a majority of the circuit courts who have addressed the issue have adopted the same view as the Third Circuit. In *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116 (3d. Cir. 2018), a case involving 27,800 unsolicited text messages to Dominguez' cellphone over a period of 17 months, the Third Circuit held as follows:

> Ultimately, Dominguez cannot point to any evidence that creates a genuine dispute of fact as to whether the Email SMS Service had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers. On the contrary, the record indicates that the Email SMS Service sent messages only to numbers that had been individually and manually inputted into its system by a user.[29] There can be little doubt that Dominguez suffered great annoyance as a result of the unwanted text messages. But those messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation. The TCPA's prohibition on autodialers is therefore not the proper means of redress. (*Dominguez, supra at* 121).

Notably, the Third Circuit specifically mentioned Claimant's expert Jeffrey Hanson in this decision upholding the exclusion by the District Court of his report and that of Randall Snyder, another one of Dominguez' experts, finding that Snyder's "...opinion, however, is supported by little more than the same type of overbroad, generalized assertions found in the Hansen Report." *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 120 (3d. Cir. 2018).

It also bears noting that it is undisputed that Hansen did not physically inspect the telephony dialing systems used by the third party vendors in this case and that his opinions have been rejected by courts for this very reason. In *Tomeo v. Citigroup,* 2018 WL 4627386, *7, (N.D. Ill. 2018), the District Court wrote as follows:

"Finally, Citi argues that Hansen's opinions are not based upon sufficient facts and data because he did not physically inspect Citi's dialing systems. This argument goes directly to the text of Rule 702, which requires that the expert's testimony be "based on sufficient facts or data." Other district courts have excluded Hansen's testimony for similar reasons. *See Keyes*, 2018 WL 3914707, at \*3–4 (finding that, because Hansen had not physically inspected the defendant's dialer, "Hansen's report is 'unsupported speculation' and a 'mere guess' regarding how [the defendant] uses the Aspect System to make calls" (citation omitted) ); *Mohamed v. Am. Motor Co.*, No. 15-23352-Civ-COOKE/TORRES, 2017 WL 4310757, at \*4 (S.D. Fla. Sept. 28, 2017) (noting that, where Hansen merely reviewed information from the defendant's website and YouTube videos, he did "not have sufficient information on which to base his opinion, rendering it simply 'the *ipse dixit* of the expert' " (citation omitted) ); *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 WL 1767097, at \*5 (S.D. Fla May 2, 2014)(emphasizing that the expert "cannot even say whether [the defendant's] own equipment conforms to the specifications discussed in its handbook" because he never actually examined the equipment). Here, Hansen relied upon manuals that Citi produced and his experience and knowledge of predictive dialers to make his determinations about Citi's dialers. Doc. 121 Ex. 3 ¶¶ 29, 34. However, Hansen did not physically inspect Citi's dialers, and he admitted that in fact he had never physically worked with an Aspect UIP dialer. Doc. 148-9 at 26:8–9. Tomeo attempts to distinguish the cases excluding dialers that had not been physically examined by arguing that those dialers were customized, whereas "Aspect is an off-the-shelf system" and "there is no evidence in the record that Citi customized the equipment." Doc. 165 at 17. Perhaps if Tomeo provided support for its contention that Citi's dialer had not been customized, this would be enough. But it is Tomeo's burden to demonstrate that his expert reports and testimony are admissible, and he has not provided that support. Just as in *Legg*, Hansen cannot even credibly state that Citi's equipment conforms to the specifications discussed in the manual. Because the Court finds that Tomeo has not shown that Hansen's opinions regarding Citi's dialers are based on sufficient facts and data, the Court excludes the portions of Hansen's reports that make findings regarding the function of Citi's dialers."

Claimant's assertion that Respondent acted without "lawful purpose" in violation

of the Cardmember Agreement is similarly without merit. Claimant cites N.J.S.A. 2C:33–

4(a)(c) for this proposition. The statute reads in pertinent part as follows:

Harassment

Except as provided in subsection e., a person commits a petty disorderly persons offense if, with purpose to harass another, he:

a. Makes, or cause to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language or any other manner likely to cause annoyance or alarm.

c. Engages in any other course of alarming conduct or repeatedly committed acts with purpose to alarm or seriously annoy such other person.

The record in this arbitration does not support a finding that Respondent violated any of these provisions. Claimant points to questioning of Respondent's representative Jeffrey Meeks at the hearing who was asked about calls recorded in the call log for July 24, 2017. On this particular day it is alleged that Claimant received 10 calls starting at 7:29am and ending at 1:15pm. (Claimant's Post Hearing Brief, p. 5). Meeks testified that at least one of the calls comes up as a duplicate log entry and another went to voicemail. He also testified that he lacked knowledge about these calls because the calls were made by Teleperformance on Respondent's behalf. Claimant's testimony concerning calls from Respondent using "spoof numbers" was not connected to any particular dates. Meeks was not presented with the call log and asked to specify the dates in question.

Leaving aside the relevancy of this testimony since there is no claim here under the Fair Debt Collections Practices Act, this testimony does not support a finding that the calls were made with a purpose to harass another, at extremely inconvenient hours, in a manner likely to cause annoyance or alarm, or that they constituted another course of alarming conduct or repeatedly committed acts with the purpose to alarm or seriously annoy another person. *See*, N.J.S.A. 2C:33–4(a)(c).

As indicated earlier, Respondent has brought a counterclaim against Claimant Adam Lieberman and a crossclaim against his spouse and the actual cardholder in this case, Genese Lieberman. The counterclaim against Claimant Adam Lieberman is for fraud and

seeks declaratory relief and damages. The crossclaim against Genese Lieberman seeks declaratory relief and indemnification.

The counterclaim has been established by the evidence presented in this arbitration. Adam Lieberman falsely represented to Respondent that he was Genese Lieberman when he applied for a credit card pretending to be her. In that application, he falsely gave his business address as her home address. He falsely represented that his cell phone number ending in 2345 was her phone number.

Mr. Lieberman opened this account without his spouse's knowledge in 2010. In the credit card application, Claimant falsely provided Mrs. Lieberman's full name, Social Security number, and her date of birth. Over time, the Respondent sent statements to Claimant's business address which was a false address for his spouse.

Importantly, according to Respondent's Post Hearing Brief and the record in evidence in this case, Claimant misrepresented in a verified response to an interrogatory that he did not "…know what steps his wife took or what information his wife provided, in applying or obtaining a credit card from Credit One." He also indicated that "Claimant has never provided his telephone number to Credit One." Subsequently, at his deposition Claimant changed his answer and testified that "[i]t's likely that I did it.", and at the hearing he also shared that it was likely that he opened the account himself but he could not recall with certainty. ( Respondent's Post Hearing Brief, p. 3).

The Cardholder Agreement expressly authorized Respondent to contact any phone number that was provided it for any lawful purpose including collection on the account. After the account was opened in 2010, a Change in Terms, effective January 1, 2016, was mailed to Genese Lieberman at the address that Claimant had falsely provided to be her

11

home address. As in the original Cardholder Agreement, the Change of Terms also allowed

Respondent to contact Claimant for collection purposes at any phone number provided to

it. The Change in Terms that was sent to Mrs. Lieberman at Claimant's office expressly

contained a Communication Revocation provision requiring that Respondent be sent

written notice revoking prior consent to telephone communications with very specific

requirements for that notice. It reads as follows:

> **COMMUNICATION REVOCATION:** If you do not want to receive
> communications as described in the previous paragraph, **you must**: (i)
> provide us with written notice revoking your prior consent, (ii) in that
> written notice, you must include your name, mailing address, and the last
> four digits of your Account number; (iii) advise whether you would like
> communications to cease via mail, telephone number(s), email, text/SMS,
> or cease in all forms; (iv) if you are requesting communications to cease via
> telephone number(s) and/or email, please provide the specific phone
> number(s) and email address; (v) you must send this written notice to:
> Attention – Credit One Bank Customer Service, P.O. Box 98850, Las
> Vegas, NV 89193-8850 (Respondent's Post Hearing Brief, p.3).

The Change in Terms also contained an Indemnification Clause under which it was

made very clear that if the cardholder provided telephone numbers for which they are not

the subscriber the cardholder would indemnify Credit One for any costs and expenses

including reasonable attorney's fees incurred as a result of contacting or attempting to

contact the cardholder at that number. The Indemnification Clause reads as follows:

> **INDEMNIFICATION:** If you provide telephone number(s) for which you
> are not the subscriber, you understand that you shall indemnify us for any
> costs and expenses, including reasonable attorneys' fees, incurred as a result
> of us contacting or attempting to contact you at the number(s).

Eventually the card account became delinquent and Respondent called the number

provided by Claimant seeking to collect on its debt.

12

In August 2016, Adam Lieberman called Credit One and provided to Credit One all the personal identifiers for his wife that it requested. (Respondent's Post Hearing Brief, p. 7). Adam Lieberman then proceeded to close the account, but it remained in default.

At no point did the actual account holder Genese Lieberman ever contact Respondent to revoke consent to the phone calls. She certainly did not follow the protocol to send written notice as outlined in the communications update that she received when the terms on the account were changed. Instead on July 13, 2017, Adam Lieberman called Credit One. This telephone call was recorded by the Respondent and is remarkable for what it says about Claimant's conduct with reference to the collection calls and the credit card debt owed by his spouse. In the transcription of the call which can be found at Exhibit 29 of the record, Respondent's representative named "Simon" asked for the credit card number that Claimant is calling about. Claimant says "I don't have it handy. I'm actually returning a phone call from you guys in this phone call." Simon then asks "Do you have any business with Credit One bank sir?" Respondent responds by saying "My wife does. Can I give you her Social Security number?" At that point, the representative indicates that he can't disclose any information concerning Genese Lieberman's account.

Claimant is specifically asked on this call whether Respondent should delete his phone number because he complains that "...I don't want the phone calls you know coming to my phone..." (Exhibit 29). The transcript testimony reads in pertinent part as follows:

> Simon: Well sir, I cannot disclose information regarding your wife's account. We need to only speak to your wife.
>
> Adam Lieberman: Okay well, you know, just don't call me about it which is why I'm reaching out to you guys right now – to see what's cooking, that's why.

13

> Simon: Okay I do apologize for the phone calls that you are receiving, sir. But for me to delete your number on our end, can you please verify your phone number?
>
> Adam Lieberman: Well this is getting a little complicated. Let me get with my wife – let me make sure that she knows what's going on before you take the phone call – I want to make sure her account is up to date. Is her account up to date right now or are you saying it's currently behind?
>
> Simon: Well if she is receiving phone calls from us, sir, then that means that her account is behind.
>
> Adam Lieberman; Okay leave it how it is right now. Let me get with her and see what's going on on her end. Maybe she mailed a check I wasn't aware of and let me have her give you a call back so that you can speak to her directly. Is that okay?

It is undoubtedly the case that this Final Award would not have been drafted and, indeed, there would have been no arbitration in this case had Claimant or his wife simply alerted Respondent that they did not wish to receive any more phone calls at his number.

Instead, Claimant wrote two letters to Credit One. In the first letter, dated July 20, 2017, as in his second letter, dated August 30, 2017, he indicated that he was writing on behalf of his wife Genese Lieberman. In fact, his wife knew of neither letter. In response to this first letter, Respondent sent a letter to Mrs. Lieberman on August 4, 2017 notifying her that a third party had contacted Respondent about her account and that a power of attorney would be needed in order for them to discuss her account with this third-party.

Adam Lieberman actually received Respondent's letter but did not share it with his spouse nor was a power of attorney ever sent to Respondent. On August 30, 2017 Adam Lieberman sent the same letter on behalf of his wife without her knowledge. On September 12, 2017, Respondent again responded to Mrs. Lieberman at her home address this time specifically indicating that Adam Lieberman had contacted Credit One but that Credit One could not discuss her account with him until she provided a power of attorney for him.

14

Neither of these letters were received by Genese Lieberman and Respondent never received the power of attorney it twice requested. Notably, Mrs. Lieberman testified that she was never told about Credit One's requests for powers of attorney.

There are a lot of questions raised by Respondents with reference to the wording and positioning of the account numbers and phone numbers and the information sought by Adam Lieberman in his letters. In the end, however these questions are not critical to understanding what occurred here.

In the abstract, one might, albeit with great difficulty, conclude that all of the Claimant's and his spouse's conduct in this case was innocent and that there was just a simple misunderstanding between ordinary consumers and an overbearing bank.

The reality, however, is that Claimant decided to bring an arbitration and is seeking compensation in the hundreds of thousands of dollars for what is decidedly a fraud. This conclusion is driven by the fact that Claimant along with the attorneys representing him here have instituted several TCPA lawsuits against six other financial institutions including Toyota Financial Services, Citibank, Inc., Comenity Capital Bank, Barclays Bank PLC, Capital One Bank (USA), N. A., and Kohl's Department Stores, Inc. (Respondent's Post Hearing Brief, p.14).

In each of these cases, Claimant applies for credit cards for his wife using her information and without her knowledge and then provides his cell phone number instead of Mrs. Lieberman's. He then sues, represented by the same attorneys who are representing him and his wife in this case, for TCPA violations when the cards default and the institution starts calling the false cellphone number provided on the credit application. It is undisputed

15

that in 2018 alone, funds from these lawsuits comprised up to 30% of his annual income, which ranged from **Redacted** (Respondent's Post Hearing Brief, p.15).

These claims appear to be a business model for Claimant wherein he runs up credit card debt on these accounts, defaults on the debt, and when the credit issuing entities seek to collect by calling the number he falsely provided on his wife's credit application, he turns around and sues them for alleged violations of the TCPA which if established could lead to damages awards in the hundreds of thousands of dollars.

Claimant is not a stranger to fraud. He was convicted of fraud in 1997 when he pled guilty to securities fraud and conspiracy to commit securities fraud resulting in a felony conviction, a jail sentence of nine months, and $14.5 million in restitution and penalties. As a consequence of that conviction, he was barred from trading in securities. (Respondent's Post Hearing Brief, p.14)

Claimant's conviction for fraud is of course highly relevant on the issue of his credibility and his willingness to deliberately further his self interest at the expense of society. Claimant is a sophisticated businessperson who currently is a **Redacted** Relatedly, his spouse testified that she is a **Redacted**

None of this would of course matter had Claimant simply availed himself of the opportunity to tell Simon, Respondent's representative, "Please do not call me any longer, you are calling the wrong phone number." Simon was very clear about this on the July 13, 2017 phone call. Respondent's representative at the hearing, Jeffrey Meek, testified that the bank would remove an individual's number if that person claimed that it was not the correct number on an account.

16

Under the circumstances, Claimant lacks standing because he manufactured his TCPA claims and he is barred from recovery. *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 795-806 (W.D. Pa. 2016). (Respondent's Post Hearing Brief, p.33)

In addition, Respondent has established that Claimant is liable to Respondent on its counterclaim for fraud under both Nevada law and New Jersey law. "Under Nevada law and New Jersey law, the elements of fraud are: (1) A false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance. *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1413 (D. Nev. 1995); *First Valley Leasing, Inc. v. Goushy*,795 F. Supp. 693, 701 (D.N.J. 1992) (same). 'The defendant's misrepresentation must be material and relate to a past or present fact or situation. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981).'" (Respondent's Post Hearing Brief, p.31)

It is clear beyond peradventure that Claimant instituted this arbitration to fraudulently collect damages. He could have simply discontinued the calls for which he has instituted suit by alerting Respondent's representative on his July 13, 2017 phone call that he wanted his cellphone number deleted. Obviously, he could have also discontinued the calls by having his wife directly call Credit One or sending back the requested powers of attorney.

Claimant's decision to sue has cost Respondent damages in attorney's fees and costs both in defending the TCPA claims and in proving up the counterclaim and the

17

crossclaim. Moreover, the indemnification provision in the Cardholder Agreement clearly states that Genese Lieberman as the cardholder is obligated to indemnify Credit One for any costs and expenses including reasonable attorney's fees incurred as a result of Respondents contacting or attempting to contact her at the phone number provided.

Accordingly, Claimant's claims are dismissed. Respondent has established his counterclaim and is entitled to a declaration that Claimant Adam Lieberman has committed fraud and must compensate Respondent for all its costs and expenses including reasonable attorney's fees in this arbitration. Respondent has established its crossclaim against Genese Lieberman and is entitled to a declaration that she must indemnify Respondent for any costs and expenses including reasonable attorney's fees incurred in this arbitration.

## III.   Attorneys' Fees, Costs, and Expenses

Respondent seeks an award to Credit One of $286,064.62 consisting of attorneys' fees in the amount of $200,088.91, costs in the amount of $7,284.95, and arbitration expenses in the amount of $78,690.76. Respondent produced invoices issued to Credit One in connection with this case as well as detailed time entries for each task performed by counsel. They have provided proof that they incurred arbitral expenses to JAMS in the total amount of $78,690.76 as well as costs in the amount of $7,284.95.

Claimant's arguments against the grant of attorneys' fees, costs, and expenses are unavailing. The amount of attorney time submitted is reasonable and appropriate. The total attorneys' fees of $200,088.91 sought by Credit One represents an appropriate lodestar amount. *See Local Union No.1992* 34 F.Supp.2d at 234 (D.N.J.1998) (quoting *Public Interest Research Group of New Jersey, Inc.*, 51 F.3d at 1185 (3d Cir.1995). (Respondent

18

Credit One Bank N.A.'S Application for Attorneys' Fees, Costs, and Expenses, dated, October 16, 2020, p.6).

Claimant does not directly challenge the lodestar amount. Instead, he and his wife argue any that fees, costs, and expenses cannot be properly awarded for work done on claims unrelated to Respondent's counterclaim. This argument is without merit. The undersigned arbitrator found that the entire case was a fraud and should never have been brought against Credit One. Credit One should be reimbursed for all the money it had to pay out in defending this fraudulent claim.

Claimant's argument that his spouse Genese Lieberman should not be held accountable for Credit One's expenditures is similarly without merit. Genese Lieberman used the credit card and thus became bound to the terms of the account including its Indemnification Clause.

## IV.   **Conclusion and Final Award**

A. Claimant has not proven any of his claims and they are hereby dismissed, and he is entitled to receive nothing from the Respondents.

B. Respondent has established his counterclaim and is entitled to a declaration that Claimant Adam Lieberman has committed fraud and must compensate Respondent for all its costs and expenses including reasonable attorneys' fees incurred in this arbitration.

C. Respondent has established its crossclaim against Genese Lieberman and is entitled to a declaration that she must indemnify Respondent for all of its costs and expenses including reasonable attorneys' fees incurred in this arbitration.

D.  Respondent Credit One is awarded attorneys' fees in the amount of $200,088.91, arbitral expenses in the amount of $78,690.76, and costs in the amount of $7,284.95,

for a total amount of $286,064.62 incurred in arbitrating this dispute to be paid by Adam Lieberman and Genese Lieberman.

E.  Claimant has not sought interest and is not granted interest on these awards.

F.  This Final Award resolves all issues submitted on this arbitration. The undersigned arbitrator has considered and resolved all the issues and arguments raised, including those not explicitly addressed herein. Any argument not specifically addressed in this Final Award was found to be unavailing, without merit, academic, or unnecessary to reach.

Dated: New York, New York
       January 14, 2020

Hon. Ariel E. Belen (Ret.)
JAMS Arbitrator

State of New York   )

                     :ss:

County of New York )


I, Hon. Ariel E. Belen (Ret.), do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my Corrected Final Award.


                                                                       Hon. Ariel E. Belen (Ret.)

## **PROOF OF SERVICE BY E-Mail**

Re: Lieberman, Adam vs. Credit One Bank, N.A.
Reference No. 1425025196

I, Shakiya Wright-McDuffie, not a party to the within action, hereby declare that on January 14, 2021, I

served the attached Corrected Final Award on the parties in the within action by electronic mail at New York,

NEW YORK, addressed as follows:

Mr. Ari Marcus                                   Abraham J. Colman Esq.
Yitzchak Zelman Esq.                             Holland Knight
Lori Hague Esq.                                  400 South Hope St.
Marcus & Zelman, LLC                             8th Floor
701 Cookman Av.                                  Los Angeles, CA   90071
Ste. 300                                         Phone: (213) 896-2412
Asbury Park, NJ   07712                          Abe.Colman@hklaw.com
Phone: 732-695-3282                                   Parties Represented:
ari@marcuszelman.com                                 Credit One Bank, N.A.
yzelman@MarcusZelman.com
Lori@MarcusZelman.com
    Parties Represented:
    Adam Lieberman

Travis A. Sabalewski Esq.                        Mr. Christopher Murphy
Holland & Knight LLP                             Holland Knight
1650 Tysons Blvd.                                150 N. Riverside Plaza
Suite 1700                                       Suite 2700
Mc Lean, VA   22102                              Chicago, IL   60606
Phone: 703-720-8600                              Phone: 312.715.5722
Travis.Sabalewski@hklaw.com                      chris.murphy@hklaw.com
    Parties Represented:                             Parties Represented:
    Credit One Bank, N.A.                            Credit One Bank, N.A.

I declare under penalty of perjury the foregoing to be true and correct. Executed at New York, NEW

YORK on January 14, 2021.

_SMcDuffie_

_____
Shakiya Wright-McDuffie
JAMS
swrightmcduffie@jamsadr.com