EXHIBIT A

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CREDIT ONE BANK, N.A., | ) | [__ Civ. ____ (___)(___)] |
| | ) | |
| *Petitioner*, | ) | |
| v. | ) | |
| | ) | |
| ADAM LIEBERMAN AND GENESE LIEBERMAN, | ) | |
| | ) | |
| *Respondents*. | ) | |

### VERIFICATION OF ANDREW J. SOVEN IN SUPPORT OF
### PETITION TO CONFIRM ARBITRATION AWARD

**Andrew J. Soven** verifies under penalty of perjury as follows:

1.      I am a partner at Holland & Knight LLP and am one of the attorneys representing Petitioner Credit One Bank, N.A. ("Petitioner" or "Credit One") in the above-referenced action.  I respectfully submit this Verification in support of Credit One's Petition against Respondents Adam Lieberman and Genese Lieberman ("Respondents" or the "Liebermans") for confirmation of the Petitioner's arbitration award dated January 14, 2021 (the "Final Award") rendered by Hon. Ariel Belen (Ret.) in JAMS Arbitration, *Adam Lieberman vs. Credit One Bank, N.A.*, JAMS Case Ref. No. 1425025196.

2.      Attached as **Exhibit 1** is a true and correct redacted copy of the Final Award dated January 14, 2021.

//

//

//

//

3.      Attached as **Exhibit 2** is a true and correct copy of the arbitration agreement between the parties, including the applicable changes in terms.

Dated: February 18, 2021

Respectfully submitted,

____/s/ *Andrew J. Soven*_____
Andrew J. Soven
NJ Attorney No. 023671995
**HOLLAND & KNIGHT LLP**
2929 Arch Street, Suite 800
Philadelphia, PA 19104
Phone: 215-252-9554
Andrew.Soven@hklaw.com

*Counsel for Credit One Bank, N.A.*

EXHIBIT 1

**JAMS ARBITRATION**
**NEW YORK, NEW YORK**

Adam Lieberman,

Claimant,

  and         **JAMS Ref. No. 1425025196**

Credit One Bank, N. A.,

Respondent.

## CORRECTED FINAL AWARD

### I. Introduction

1. <u>Parties and Counsel</u>: The parties to this arbitration are identified in the caption and are represented as follows:

  <u>Counsel for Claimant:</u>

  Ari H. Marcus, Esq.
  Marcus & Zelman, LLC
  1500 Allaire Avenue
  Asbury Park, New Jersey 07712
  Tel: 732 695-3282
  Fax: 732 298-6256
  Email: Ari@MarcusZelman.com

  Yitzchak Zelman, Esq.
  Marcus & Zelman, LLC
  1500 Allaire Avenue
  Asbury Park, New Jersey 07712
  Tel: 732 695-3282
  Fax: 732 298-6256
  Email: YZelman@MarcusZelman.com

1

Lori Hague, Esq.
Marcus & Zelman, LLC
1500 Allaire Avenue
Asbury Park, New Jersey 07712
Tel:   732 695-3282
Fax:   732 298-6256
Email: Lori@MarcusZelman.com

Counsel for Respondents:

Christopher R. Murphy, Esq.
Holland & Knight LLP
150 N. Riverside Plaza
Suite 2700
Chicago, Illinois 60606
Tel.:  312 715-5722
Fax:  312 578-6666
Email:  chris.murphy@hklaw.com

Travis A. Sabalewski, Esq.
Holland & Knight LLP
1650 Tysons Boulevard
Suite 1700
Tysons, Virginia 22102
Tel.:  703 720-8015
Fax:  703 720-8610
Email: travis.sabalewski@hklaw.com

Abraham J. Colman, Esq.
Holland & Knight LLP
400 South Hope Street
8th Floor
Los Angeles, California 90071
Tel: 213 896-2412
Fax:  213 896-2450
Email:  abe.colman@hklaw.com

2. JAMS Arbitrator:

> Hon. Ariel E. Belen (Ret.)
> JAMS
> 620 Eighth Avenue
> 34th Floor
> New York, New York 10018
> Tel: 212 751-2700
> Fax: 212 751-4099
> Email: abelen@jamsadr.com

3. JAMS Case Manager:

> Shakiya Wright-McDuffie
> JAMS
> 620 Eighth Avenue
> 34th Floor
> New York, New York 10018
> Tel.: 212 607-2761
> Fax: 212 751-4099
> Email: swrightmcduffie@jamsadr.com

This arbitration is brought pursuant to the "Arbitration Provision" clause in the "Credit One Bank Disclosures and Terms & Conditions for Credit One Bank's Credit Cards" attached to a certain "JAMS Demand for Arbitration Form", dated November 13, 2017, ("Demand for Arbitration").

The claims are set forth in a certain "Complaint for Violations of the Telephone Consumer Protection Act", dated November 13, 2017, and referenced in the abovementioned Demand for Arbitration. Respondent Credit One Bank, N.A., ("Respondent"), answered the Demand for Arbitration by submitting a certain "Respondent Credit One Bank, N.A.'s Answer and Affirmative Defenses to Claimant's Demand form Arbitration", dated May 14, 2018, ("Respondent's Answer"). Claimant Adam Lieberman, ("Claimant"), subsequently filed a certain "Amended Compliant for Violations of the Telephone Consumer Protection Act, Demand for Jury Trial", dated

March 13, 2019, ("Amended Complaint"). Respondent subsequently filed a certain "Credit One Bank N. A.'S Cross-Complaint Against Genese Lieberman for: 1. Breach of Contract; 2. Negligence; 3. Fraud; 4. Negligent Misrepresentation; and 5. Declaratory Relief and Indemnification", dated September 19, 2019, ("Respondent's Cross-Complaint"). Respondent then submitted a certain "Credit One Bank N. A.'S Counterclaim Against Adam Lieberman for: 1. Fraud; and 2. Declaratory Relief", dated December 12, 2019, ("Respondent's Counterclaim").

An arbitration hearing was conducted in this matter on January 22 and 23, 2020, at the New York offices of JAMS at which the sworn testimony of Adam Lieberman, Genese Lieberman, Jeffrey Meek, and Jeffrey Hansen was taken and transcribed. Jeffrey Hansen testified via videoconference.

On September 9, 2020, the undersigned issued a Corrected Interim Award that fully and finally resolved "all issues submitted for decision in this proceeding with the exception of the computation of Respondent's fees and costs incurred in connection with the arbitration of the dispute." (Section III, Corrected Interim Award). This Final Award adopts and republishes the Corrected Interim Award in its entirety and amends the Interim Award only as necessary to make certain ministerial and stylistic edits, and to integrate the arbitrator's subsequent decision regarding the Respondent's request for attorneys' fees, costs, and expenses. Section III of the Corrected Interim Award entitled Conclusion and Interim Award is not reproduced here for the sake of brevity, although the findings and legal conclusions contained in that section are adopted here in their entirety.

This Final Award is based upon a review of all the pleadings in this arbitration proceeding; Claimant's Pre-Hearing Submission with Exhibits, dated January 7, 2020;

4

Respondent's Pre-Hearing Submissions including Credit One's Statement of Position, dated January 6, 2020 and Respondent's Witness List, dated January 6, 2020; Respondent's Counter Designation of Deposition Testimony, dated February 11, 2020; Claimant's Post-Hearing Brief, dated March 17, 2020; Respondent's Post Hearing Brief, dated March 18, 2020; Respondent's email, dated April 6, 2020, submitting new case authorities; Claimant's emails, dated April 6, 2020 and April 7, 2020, in response to Respondent's April 6, 2020 email; Respondent's email, dated April 7, 2020, addressing Claimant's April 6, 2020 and April 7, 2020 emails; the transcripts of the arbitration hearing which reflect the sworn testimony of the testifying witnesses and the colloquy and arguments of counsel on various substantive and procedural issues; as well as all the exhibits submitted with the pre-hearing submissions and at the arbitration hearing; and the oral argument of counsel at a Zoom videoconference on June 3, 2020; Respondent's Credit One Bank N.A.'S Application for Attorneys' Fees, Costs, and Expenses, dated October 16, 2020, Claimant's Opposition to Respondent's Credit One Bank's Motion for Attorney's Fees and Costs, dated November 23, 2020; and Respondent's Credit One Bank N.A.'S Reply in Support of its Application for Attorneys' Fees, Costs, and Expenses, dated December 8, 2020; as well as all the exhibits submitted with these submissions.

This Final Award incorporates the findings of fact, legal analysis, and conclusions of law stated in the Corrected Interim Award. In addition, this Final Award contains the arbitrator's decision regarding the Respondent's request for attorney's fees, costs, and expenses. Therefore, in this Final Award, all arbitrable issues presented to the undersigned arbitrator in this arbitration have been fully and finally decided.

The undersigned arbitrator recognizes and appreciates the high quality of the presentations by counsel for each party. The result of this proceeding is not a reflection on any difference in the quality of those presentations, but of the arbitrator's review of the record.

The factual findings that follow are necessary to this Final Award. They are derived from the submissions filed by the parties and their oral argument. To the extent that these findings differ from any party's position, that is the result of weighing of the written evidence and the oral argument of counsel, including determinations by the arbitrator as to credibility and weight, as well as applications of burdens of proof and legal principles.

## II.    Analysis

Claimant brought this arbitration seeking statutory and enhanced damages under the Telephone Consumer Protection Act, 47 U.S.C. § 247 *et seq.*, ("TCPA"), for 611 calls placed by Respondent Credit One, N.A. after July 28, 2017, when he asserts that Respondent received his request to stop calling his cell phone number. It is undisputed that Respondent made these 611 calls, often as many as 10 times a day, as well as 239 previous calls to Claimant from June 8, 2017 to July 13, 2017, in an attempt to collect outstanding credit card debt.

Claimant contends that the calls made after July 28, 2017 violated the TCPA because they were autodialed calls made without the consent of the called party through the use of predictive dialers that constitute an automatic telephone dialing system ("ATDS") prohibited by the TCPA. In this connection, Claimant also asserts that Respondent's calls were by definition without consent since the Cardholder Agreement between Claimant and Respondent only allowed Claimant to contact Claimant for any "...lawful purpose." Moreover, according to Claimant, Respondent's repeated calls, sometimes as early as 6:00am, constituted unlawful harassment under New Jersey law in violation of N.J.S.A. 2C:33–4(a)(c). "When consumers

6

consent to calls for a 'lawful purpose', they are not consenting to being endlessly targeted by their credit card company until they finally succumb to whatever it is that the credit card company wants." (Claimant's Post-Hearing Brief, p. 5).

Respondent denies that it or its third party vendors used an ADTS violative of the TCPA to contact Claimant. Respondent contends that the evidence in this case established that all of the challenged calls in this case came from customer databases and lists and were not made from randomly or sequentially generated numbers in violation of the TCPA. Respondent also asserts that there is ample basis to question the reliability of Claimant's expert, if for no other reason than that he did not physically inspect the telephony dialing systems used by the third party vendors in this case. In addition, Respondent has counterclaimed against Claimant for fraud seeking declaratory relief and monetary damages. Respondent also cross-claimed against Claimant's spouse Genese Lieberman who is the actual cardholder seeking declaratory relief and indemnification.

Claimant's arguments are unavailing. Claimant is a resident of New Jersey. Under the prevailing law in the Court of Appeals for the Third Circuit, the TCPA claims asserted by Claimant for the calls made to his cellphone fail as a matter of law. There is no evidence in this case that Claimant received telephone calls from Credit One because his cellphone number was randomly or sequentially generated by Respondent's telephony systems. To the contrary, his cellphone number was obtained when he opened the subject credit card account on his wife's behalf and gave his cellphone number as the specific number to be called in relation to this account. The calls were made to him at his specific cellphone number attached to his wife's specific account about the specific debt owed under that account.

7

Although there appears to be a split among the circuit courts on the question of whether an ADTS that calls from a stored list constitutes an ADTS that violates the TCPA, a majority of the circuit courts who have addressed the issue have adopted the same view as the Third Circuit. In *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116 (3d. Cir. 2018), a case involving 27,800 unsolicited text messages to Dominguez' cellphone over a period of 17 months, the Third Circuit held as follows:

> Ultimately, Dominguez cannot point to any evidence that creates a genuine dispute of fact as to whether the Email SMS Service had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers. On the contrary, the record indicates that the Email SMS Service sent messages only to numbers that had been individually and manually inputted into its system by a user.[29] There can be little doubt that Dominguez suffered great annoyance as a result of the unwanted text messages. But those messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation. The TCPA's prohibition on autodialers is therefore not the proper means of redress. (*Dominguez, supra at* 121).

Notably, the Third Circuit specifically mentioned Claimant's expert Jeffrey Hanson in this decision upholding the exclusion by the District Court of his report and that of Randall Snyder, another one of Dominguez' experts, finding that Snyder's "...opinion, however, is supported by little more than the same type of overbroad, generalized assertions found in the Hansen Report." *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 120 (3d. Cir. 2018).

It also bears noting that it is undisputed that Hansen did not physically inspect the telephony dialing systems used by the third party vendors in this case and that his opinions have been rejected by courts for this very reason. In *Tomeo v. Citigroup,* 2018 WL 4627386, *7, (N.D. Ill. 2018), the District Court wrote as follows:

8

"Finally, Citi argues that Hansen's opinions are not based upon sufficient facts and data because he did not physically inspect Citi's dialing systems. This argument goes directly to the text of Rule 702, which requires that the expert's testimony be "based on sufficient facts or data." Other district courts have excluded Hansen's testimony for similar reasons. *See Keyes*, 2018 WL 3914707, at *3–4 (finding that, because Hansen had not physically inspected the defendant's dialer, "Hansen's report is 'unsupported speculation' and a 'mere guess' regarding how [the defendant] uses the Aspect System to make calls" (citation omitted) ); *Mohamed v. Am. Motor Co.*, No. 15-23352-Civ-COOKE/TORRES, 2017 WL 4310757, at *4 (S.D. Fla. Sept. 28, 2017) (noting that, where Hansen merely reviewed information from the defendant's website and YouTube videos, he did "not have sufficient information on which to base his opinion, rendering it simply 'the *ipse dixit* of the expert' " (citation omitted) ); *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 WL 1767097, at *5 (S.D. Fla May 2, 2014)(emphasizing that the expert "cannot even say whether [the defendant's] own equipment conforms to the specifications discussed in its handbook" because he never actually examined the equipment). Here, Hansen relied upon manuals that Citi produced and his experience and knowledge of predictive dialers to make his determinations about Citi's dialers. Doc. 121 Ex. 3 ¶¶ 29, 34. However, Hansen did not physically inspect Citi's dialers, and he admitted that in fact he had never physically worked with an Aspect UIP dialer. Doc. 148-9 at 26:8–9. Tomeo attempts to distinguish the cases excluding dialers that had not been physically examined by arguing that those dialers were customized, whereas "Aspect is an off-the-shelf system" and "there is no evidence in the record that Citi customized the equipment." Doc. 165 at 17. Perhaps if Tomeo provided support for its contention that Citi's dialer had not been customized, this would be enough. But it is Tomeo's burden to demonstrate that his expert reports and testimony are admissible, and he has not provided that support. Just as in *Legg*, Hansen cannot even credibly state that Citi's equipment conforms to the specifications discussed in the manual. Because the Court finds that Tomeo has not shown that Hansen's opinions regarding Citi's dialers are based on sufficient facts and data, the Court excludes the portions of Hansen's reports that make findings regarding the function of Citi's dialers."

Claimant's assertion that Respondent acted without "lawful purpose" in violation

of the Cardmember Agreement is similarly without merit. Claimant cites N.J.S.A. 2C:33–

4(a)(c) for this proposition. The statute reads in pertinent part as follows:

Harassment

Except as provided in subsection e., a person commits a petty disorderly persons offense if, with purpose to harass another, he:

9

a. Makes, or cause to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language or any other manner likely to cause annoyance or alarm.

c. Engages in any other course of alarming conduct or repeatedly committed acts with purpose to alarm or seriously annoy such other person.

The record in this arbitration does not support a finding that Respondent violated any of these provisions. Claimant points to questioning of Respondent's representative Jeffrey Meeks at the hearing who was asked about calls recorded in the call log for July 24, 2017. On this particular day it is alleged that Claimant received 10 calls starting at 7:29am and ending at 1:15pm. (Claimant's Post Hearing Brief, p. 5). Meeks testified that at least one of the calls comes up as a duplicate log entry and another went to voicemail. He also testified that he lacked knowledge about these calls because the calls were made by Teleperformance on Respondent's behalf. Claimant's testimony concerning calls from Respondent using "spoof numbers" was not connected to any particular dates. Meeks was not presented with the call log and asked to specify the dates in question.

Leaving aside the relevancy of this testimony since there is no claim here under the Fair Debt Collections Practices Act, this testimony does not support a finding that the calls were made with a purpose to harass another, at extremely inconvenient hours, in a manner likely to cause annoyance or alarm, or that they constituted another course of alarming conduct or repeatedly committed acts with the purpose to alarm or seriously annoy another person. *See*, N.J.S.A. 2C:33–4(a)(c).

As indicated earlier, Respondent has brought a counterclaim against Claimant Adam Lieberman and a crossclaim against his spouse and the actual cardholder in this case, Genese Lieberman. The counterclaim against Claimant Adam Lieberman is for fraud and

10

seeks declaratory relief and damages. The crossclaim against Genese Lieberman seeks declaratory relief and indemnification.

The counterclaim has been established by the evidence presented in this arbitration. Adam Lieberman falsely represented to Respondent that he was Genese Lieberman when he applied for a credit card pretending to be her. In that application, he falsely gave his business address as her home address. He falsely represented that his cell phone number ending in 2345 was her phone number.

Mr. Lieberman opened this account without his spouse's knowledge in 2010. In the credit card application, Claimant falsely provided Mrs. Lieberman's full name, Social Security number, and her date of birth. Over time, the Respondent sent statements to Claimant's business address which was a false address for his spouse.

Importantly, according to Respondent's Post Hearing Brief and the record in evidence in this case, Claimant misrepresented in a verified response to an interrogatory that he did not "…know what steps his wife took or what information his wife provided, in applying or obtaining a credit card from Credit One." He also indicated that "Claimant has never provided his telephone number to Credit One." Subsequently, at his deposition Claimant changed his answer and testified that "[i]t's likely that I did it.", and at the hearing he also shared that it was likely that he opened the account himself but he could not recall with certainty. ( Respondent's Post Hearing Brief, p. 3).

The Cardholder Agreement expressly authorized Respondent to contact any phone number that was provided it to for any lawful purpose including collection on the account. After the account was opened in 2010, a Change in Terms, effective January 1, 2016, was mailed to Genese Lieberman at the address that Claimant had falsely provided to be her

11

home address. As in the original Cardholder Agreement, the Change of Terms also allowed

Respondent to contact Claimant for collection purposes at any phone number provided to

it. The Change in Terms that was sent to Mrs. Lieberman at Claimant's office expressly

contained a Communication Revocation provision requiring that Respondent be sent

written notice revoking prior consent to telephone communications with very specific

requirements for that notice. It reads as follows:

> **COMMUNICATION REVOCATION:** If you do not want to receive
> communications as described in the previous paragraph, **you must**: (i)
> provide us with written notice revoking your prior consent, (ii) in that
> written notice, you must include your name, mailing address, and the last
> four digits of your Account number; (iii) advise whether you would like
> communications to cease via mail, telephone number(s), email, text/SMS,
> or cease in all forms; (iv) if you are requesting communications to cease via
> telephone number(s) and/or email, please provide the specific phone
> number(s) and email address; (v) you must send this written notice to:
> Attention – Credit One Bank Customer Service, P.O. Box 98850, Las
> Vegas, NV 89193-8850 (Respondent's Post Hearing Brief, p.3).

The Change in Terms also contained an Indemnification Clause under which it was

made very clear that if the cardholder provided telephone numbers for which they are not

the subscriber the cardholder would indemnify Credit One for any costs and expenses

including reasonable attorney's fees incurred as a result of contacting or attempting to

contact the cardholder at that number. The Indemnification Clause reads as follows:

> **INDEMNIFICATION:** If you provide telephone number(s) for which you
> are not the subscriber, you understand that you shall indemnify us for any
> costs and expenses, including reasonable attorneys' fees, incurred as a result
> of us contacting or attempting to contact you at the number(s).

Eventually the card account became delinquent and Respondent called the number

provided by Claimant seeking to collect on its debt.

In August 2016, Adam Lieberman called Credit One and provided to Credit One all the personal identifiers for his wife that it requested. (Respondent's Post Hearing Brief, p. 7). Adam Lieberman then proceeded to close the account, but it remained in default.

At no point did the actual account holder Genese Lieberman ever contact Respondent to revoke consent to the phone calls. She certainly did not follow the protocol to send written notice as outlined in the communications update that she received when the terms on the account were changed. Instead on July 13, 2017, Adam Lieberman called Credit One. This telephone call was recorded by the Respondent and is remarkable for what it says about Claimant's conduct with reference to the collection calls and the credit card debt owed by his spouse. In the transcription of the call which can be found at Exhibit 29 of the record, Respondent's representative named "Simon" asked for the credit card number that Claimant is calling about. Claimant says "I don't have it handy. I'm actually returning a phone call from you guys in this phone call." Simon then asks "Do you have any business with Credit One bank sir?" Respondent responds by saying "My wife does. Can I give you her Social Security number?" At that point, the representative indicates that he can't disclose any information concerning Genese Lieberman's account.

Claimant is specifically asked on this call whether Respondent should delete his phone number because he complains that "…I don't want the phone calls you know coming to my phone…" (Exhibit 29). The transcript testimony reads in pertinent part as follows:

> Simon: Well sir, I cannot disclose information regarding your wife's account. We need to only speak to your wife.
>
> Adam Lieberman: Okay well, you know, just don't call me about it which is why I'm reaching out to you guys right now – to see what's cooking, that's why.

13

> Simon: Okay I do apologize for the phone calls that you are receiving, sir. But for me to delete your number on our end, can you please verify your phone number?

> Adam Lieberman: Well this is getting a little complicated. Let me get with my wife – let me make sure that she knows what's going on before you take the phone call – I want to make sure her account is up to date. Is her account up to date right now or are you saying it's currently behind?

> Simon: Well if she is receiving phone calls from us, sir, then that means that her account is behind.

> Adam Lieberman; Okay leave it how it is right now. Let me get with her and see what's going on on her end. Maybe she mailed a check I wasn't aware of and let me have her give you a call back so that you can speak to her directly. Is that okay?

It is undoubtedly the case that this Final Award would not have been drafted and, indeed, there would have been no arbitration in this case had Claimant or his wife simply alerted Respondent that they did not wish to receive any more phone calls at his number.

Instead, Claimant wrote two letters to Credit One. In the first letter, dated July 20, 2017, as in his second letter, dated August 30, 2017, he indicated that he was writing on behalf of his wife Genese Lieberman. In fact, his wife knew of neither letter. In response to this first letter, Respondent sent a letter to Mrs. Lieberman on August 4, 2017 notifying her that a third party had contacted Respondent about her account and that a power of attorney would be needed in order for them to discuss her account with this third-party.

Adam Lieberman actually received Respondent's letter but did not share it with his spouse nor was a power of attorney ever sent to Respondent. On August 30, 2017 Adam Lieberman sent the same letter on behalf of his wife without her knowledge. On September 12, 2017, Respondent again responded to Mrs. Lieberman at her home address this time specifically indicating that Adam Lieberman had contacted Credit One but that Credit One could not discuss her account with him until she provided a power of attorney for him.

14

Neither of these letters were received by Genese Lieberman and Respondent never received the power of attorney it twice requested. Notably, Mrs. Lieberman testified that she was never told about Credit One's requests for powers of attorney.

There are a lot of questions raised by Respondents with reference to the wording and positioning of the account numbers and phone numbers and the information sought by Adam Lieberman in his letters. In the end, however these questions are not critical to understanding what occurred here.

In the abstract, one might, albeit with great difficulty, conclude that all of the Claimant's and his spouse's conduct in this case was innocent and that there was just a simple misunderstanding between ordinary consumers and an overbearing bank.

The reality, however, is that Claimant decided to bring an arbitration and is seeking compensation in the hundreds of thousands of dollars for what is decidedly a fraud. This conclusion is driven by the fact that Claimant along with the attorneys representing him here have instituted several TCPA lawsuits against six other financial institutions including Toyota Financial Services, Citibank, Inc., Comenity Capital Bank, Barclays Bank PLC, Capital One Bank (USA), N. A., and Kohl's Department Stores, Inc. (Respondent's Post Hearing Brief, p.14).

In each of these cases, Claimant applies for credit cards for his wife using her information and without her knowledge and then provides his cell phone number instead of Mrs. Lieberman's. He then sues, represented by the same attorneys who are representing him and his wife in this case, for TCPA violations when the cards default and the institution starts calling the false cellphone number provided on the credit application. It is undisputed

that in 2018 alone, funds from these lawsuits comprised up to 30% of his annual income, which ranged from **Redacted** (Respondent's Post Hearing Brief, p.15).

These claims appear to be a business model for Claimant wherein he runs up credit card debt on these accounts, defaults on the debt, and when the credit issuing entities seek to collect by calling the number he falsely provided on his wife's credit application, he turns around and sues them for alleged violations of the TCPA which if established could lead to damages awards in the hundreds of thousands of dollars.

Claimant is not a stranger to fraud. He was convicted of fraud in 1997 when he pled guilty to securities fraud and conspiracy to commit securities fraud resulting in a felony conviction, a jail sentence of nine months, and $14.5 million in restitution and penalties. As a consequence of that conviction, he was barred from trading in securities. (Respondent's Post Hearing Brief, p.14)

Claimant's conviction for fraud is of course highly relevant on the issue of his credibility and his willingness to deliberately further his self interest at the expense of society. Claimant is a sophisticated businessperson who currently is a **Redacted** Relatedly, his spouse testified that she is a **Redacted**

None of this would of course matter had Claimant simply availed himself of the opportunity to tell Simon, Respondent's representative, "Please do not call me any longer, you are calling the wrong phone number." Simon was very clear about this on the July 13, 2017 phone call. Respondent's representative at the hearing, Jeffrey Meek, testified that the bank would remove an individual's number if that person claimed that it was not the correct number on an account.

16

Under the circumstances, Claimant lacks standing because he manufactured his TCPA claims and he is barred from recovery. *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 795-806 (W.D. Pa. 2016). (Respondent's Post Hearing Brief, p.33)

In addition, Respondent has established that Claimant is liable to Respondent on its counterclaim for fraud under both Nevada law and New Jersey law. "Under Nevada law and New Jersey law, the elements of fraud are: (1) A false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance. *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1413 (D. Nev. 1995); *First Valley Leasing, Inc. v. Goushy*, 795 F. Supp. 693, 701 (D.N.J. 1992) (same). 'The defendant's misrepresentation must be material and relate to a past or present fact or situation. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981).'" (Respondent's Post Hearing Brief, p.31)

It is clear beyond peradventure that Claimant instituted this arbitration to fraudulently collect damages. He could have simply discontinued the calls for which he has instituted suit by alerting Respondent's representative on his July 13, 2017 phone call that he wanted his cellphone number deleted. Obviously, he could have also discontinued the calls by having his wife directly call Credit One or sending back the requested powers of attorney.

Claimant's decision to sue has cost Respondent damages in attorney's fees and costs both in defending the TCPA claims and in proving up the counterclaim and the

17

crossclaim. Moreover, the indemnification provision in the Cardholder Agreement clearly states that Genese Lieberman as the cardholder is obligated to indemnify Credit One for any costs and expenses including reasonable attorney's fees incurred as a result of Respondents contacting or attempting to contact her at the phone number provided.

Accordingly, Claimant's claims are dismissed. Respondent has established his counterclaim and is entitled to a declaration that Claimant Adam Lieberman has committed fraud and must compensate Respondent for all its costs and expenses including reasonable attorney's fees in this arbitration. Respondent has established its crossclaim against Genese Lieberman and is entitled to a declaration that she must indemnify Respondent for any costs and expenses including reasonable attorney's fees incurred in this arbitration.

## III.  Attorneys' Fees, Costs, and Expenses

Respondent seeks an award to Credit One of $286,064.62 consisting of attorneys' fees in the amount of $200,088.91, costs in the amount of $7,284.95, and arbitration expenses in the amount of $78,690.76. Respondent produced invoices issued to Credit One in connection with this case as well as detailed time entries for each task performed by counsel. They have provided proof that they incurred arbitral expenses to JAMS in the total amount of $78,690.76 as well as costs in the amount of $7,284.95.

Claimant's arguments against the grant of attorneys' fees, costs, and expenses are unavailing. The amount of attorney time submitted is reasonable and appropriate. The total attorneys' fees of $200,088.91 sought by Credit One represents an appropriate lodestar amount. *See Local Union No.1992* 34 F.Supp.2d at 234 (D.N.J.1998) (quoting *Public Interest Research Group of New Jersey, Inc.*, 51 F.3d at 1185 (3d Cir.1995). (Respondent

18

Credit One Bank N.A.'S Application for Attorneys' Fees, Costs, and Expenses, dated, October 16, 2020, p.6).

Claimant does not directly challenge the lodestar amount. Instead, he and his wife argue any that fees, costs, and expenses cannot be properly awarded for work done on claims unrelated to Respondent's counterclaim. This argument is without merit. The undersigned arbitrator found that the entire case was a fraud and should never have been brought against Credit One. Credit One should be reimbursed for all the money it had to pay out in defending this fraudulent claim.

Claimant's argument that his spouse Genese Lieberman should not be held accountable for Credit One's expenditures is similarly without merit. Genese Lieberman used the credit card and thus became bound to the terms of the account including its Indemnification Clause.

## IV.    Conclusion and Final Award

A. Claimant has not proven any of his claims and they are hereby dismissed, and he is entitled to receive nothing from the Respondents.

B. Respondent has established his counterclaim and is entitled to a declaration that Claimant Adam Lieberman has committed fraud and must compensate Respondent for all its costs and expenses including reasonable attorneys' fees incurred in this arbitration.

C. Respondent has established its crossclaim against Genese Lieberman and is entitled to a declaration that she must indemnify Respondent for all of its costs and expenses including reasonable attorneys' fees incurred in this arbitration.

19

D.  Respondent Credit One is awarded attorneys' fees in the amount of $200,088.91, arbitral expenses in the amount of $78,690.76, and costs in the amount of $7,284.95,

   for a total amount of $286,064.62 incurred in arbitrating this dispute to be paid by Adam Lieberman and Genese Lieberman.

E.  Claimant has not sought interest and is not granted interest on these awards.

F.  This Final Award resolves all issues submitted on this arbitration. The undersigned arbitrator has considered and resolved all the issues and arguments raised, including those not explicitly addressed herein. Any argument not specifically addressed in this Final Award was found to be unavailing, without merit, academic, or unnecessary to reach.

Dated: New York, New York
       January 14, 2020

_____

Hon. Ariel E. Belen (Ret.)
JAMS Arbitrator

20

State of New York   )
                                    :ss:
County of New York )


I, Hon. Ariel E. Belen (Ret.), do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my Corrected Final Award.


_____
Hon. Ariel E. Belen (Ret.)

## PROOF OF SERVICE BY E-Mail

Re: Lieberman, Adam vs. Credit One Bank, N.A.
Reference No. 1425025196

I, Shakiya Wright-McDuffie, not a party to the within action, hereby declare that on  January 14, 2021, I

served the attached Corrected Final Award on the parties in the within action by electronic mail at New York,

NEW YORK, addressed as follows:

Mr. Ari Marcus
Yitzchak Zelman Esq.
Lori Hague Esq.
Marcus & Zelman, LLC
701 Cookman Av.
Ste. 300
Asbury Park, NJ   07712
Phone: 732-695-3282
ari@marcuszelman.com
yzelman@MarcusZelman.com
Lori@MarcusZelman.com
   Parties Represented:
   Adam Lieberman

Abraham J. Colman Esq.
Holland Knight
400 South Hope St.
8th Floor
Los Angeles, CA   90071
Phone: (213) 896-2412
Abe.Colman@hklaw.com
   Parties Represented:
   Credit One Bank, N.A.

Travis A. Sabalewski Esq.
Holland & Knight LLP
1650 Tysons Blvd.
Suite 1700
Mc Lean, VA   22102
Phone: 703-720-8600
Travis.Sabalewski@hklaw.com
   Parties Represented:
   Credit One Bank, N.A.

Mr. Christopher Murphy
Holland Knight
150 N. Riverside Plaza
Suite 2700
Chicago, IL   60606
Phone: 312.715.5722
chris.murphy@hklaw.com
   Parties Represented:
   Credit One Bank, N.A.

I declare under penalty of perjury the foregoing to be true and correct. Executed at New York, NEW

YORK on  January 14, 2021.

_____
Shakiya Wright-McDuffie
JAMS
swrightmcduffie@jamsadr.com

EXHIBIT 2

M-100846

*Credit*One®
B A N K

| Interest Rates and Interest Charges | |
|---|---|
| **ANNUAL PERCENTAGE RATE (APR)** for Purchases and Cash Advances | **23.90%** This APR will vary with the market based on the Prime Rate. |
| **Paying Interest** | We will begin charging interest on purchases and cash advances on the posting date. |
| **Minimum Interest Charge** | $1.00 for any billing cycle in which an Interest Charge is due. |
| **For Credit Card Tips from the Federal Reserve Board** | To learn more about factors to consider when applying for or using a credit card, visit the website of the Federal Reserve Board at **http://www.federalreserve.gov/creditcard** |

| Fees | |
|---|---|
| **Set-up and Maintenance Fees** | Notice: The Annual Membership Fee will be billed to your account when it is opened and will reduce the amount of your initial available credit. If your account is established with a $300 credit line, your initial available credit will be $225. You may still reject this plan, provided that you have not yet used the account or paid a fee after receiving a billing statement. If you do reject the plan, you are not responsible for any fees or charges. |
| · Annual Membership Fee | **$75** first year.  **$99** thereafter, billed monthly at $8.25. |
| · Authorized User Participation Fee | **$19** annually (if applicable). |
| **Transaction Fees** | |
| · Cash Advance | Either **$5** or **8%** of the amount of each cash advance, whichever is greater. The Cash Advance Transaction Fee will be waived for the first 12 months after account opening. |
| **Penalty Fees** | |
| · Late Payment | Up to **$35** |
| · Returned Payment | Up to **$35** |

**How We Will Calculate Your Balance:** We use a method called "average daily balance (including new purchases)". See your Cardholder Agreement, Disclosure Statement and Arbitration Agreement ("Agreement") for more details.

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in your account agreement.

**VISA/ MASTERCARD CARDHOLDER AGREEMENT,
DISCLOSURE STATEMENT AND ARBITRATION AGREEMENT**

This Agreement, together with the application you previously signed and the enclosed Arbitration Agreement, governs the use of your VISA® or Mastercard® Account issued by Credit One Bank, N.A. (the "Account," "Card" or "Card Account"). The words "you," "your" and "Cardholder(s)" refer to all persons, jointly and severally, authorized to use the Card Account; and "we," "us," "our," and "Credit One Bank" refer to Credit One Bank, N.A., its successors or assigns. By requesting and receiving, signing or using your Card, you agree as follows:

**IMPORTANT NOTICE:** Please read the Arbitration Agreement portion of this document for important information about your and our legal rights under this Agreement.

**1. CHANGES IN AGREEMENT TERMS:** We can change any term of this Agreement, including the rate of the finance charge or the manner in which the finance charges are calculated, or add new terms to this Agreement, at any time upon such notice to you as is required by law. As permitted by law, any change will apply to your new activity and, in certain circumstances, to your outstanding balance when the change is effective. If you do not wish to be subject to the change, you must notify Credit One Bank by calling our toll-free number at 866-515-5721 or you may write to us at Bank Card Center, P.O. Box 95516, Las Vegas, NV 89193-5516 prior to the effective date of the change, and close your Account.

**2. JOINT ACCOUNTS:** If the application was for more than one person, or if an application was made and accepted by Credit One Bank to add a new Cardholder to an existing Account, this is a "Joint Account." Each of you individually may use the Account to the extent of the credit limit established for the Account, and each of you is jointly and severally liable for the full outstanding balance, including, but not limited to, charges made by any Cardholder. Each of you shall also be jointly and severally liable for any charges made by any person given permission to use the Account by any Cardholder. You agree that Credit One Bank is authorized to act on the instructions of any Cardholder. Instructions from any one of you will constitute instructions from all of you. Requests from a Cardholder to terminate the privileges of another Cardholder on the Account will be deemed a request for termination of the Account.

**3. AUTHORIZED USER:** At your request, we may, at our discretion, issue an additional card in the name of an Authorized User with your credit card account number. If you allow someone to use your Account, that person will be an Authorized User. By designating an Authorized User who is at least fifteen years of age, you understand that: 1) you will be solely responsible for the use of your Account and each card issued on your Account including all charges and transactions made by the Authorized User and any fees resulting from their actions to the extent of the credit limit established for the Account; 2) the Authorized User will have access to certain account information including balance, available credit and payment information. If you provide an Authorized User with any information that enables him/her to access or use your Account, you agree to be liable for the Authorized User's use of that information, and we will have no responsibility or liability for any of the Authorized User's actions; 3) we reserve the right to terminate the Card Account privileges of an Authorized User by closing your Account and issuing you a new account number; 4) the Account may appear on the credit report of the Authorized User. If you advise us that the Authorized User is your spouse, information regarding the Account will be provided to consumer reporting agencies in your name as well as in the name of the Authorized User; 5) the Authorized User can make payments, report the card lost or stolen and remove him or herself from the Account; 6) you can request the removal of the Authorized User from your Account via mail or telephone.
**Authorized User Annual Participation Fee:** An Authorized User Annual Participation Fee of $19.00 will be imposed for issuing a card in the Authorized User's name. This Fee will be assessed annually in the month the Authorized User was added to the Account.

**4. CONFLICTS BETWEEN CARDHOLDERS:** In the event Credit One Bank receives conflicting instructions from one or more of you, or if Credit One Bank has reason to believe there is a dispute between the Cardholders, Credit One Bank may, at its sole discretion, take one or more of the following actions: (1) refuse to act on any conflicting instructions; (2) restrict the Account and deny access to all Cardholders until the dispute is resolved; or (3) terminate the Account. In no event will Credit One Bank be liable for any delay or refusal to honor a request for an advance or any other request with respect to your Account, or for restricting or terminating the Account as provided in this section.

**5. YOUR CREDIT LIMIT:** Your Credit Limit will be established by Credit One Bank and will be disclosed to you when your Card is issued. It also will be shown on each of your billing statements. We reserve the right to modify your Credit Limit from time to time, and if we do so, we will notify you. You agree not to engage in any Card transaction that would cause your outstanding balance to exceed your Credit Limit. Credit One Bank may, but is not obligated to, extend credit to you from your Account if you are already up to your Credit Limit or if the borrowing would take you over your Credit Limit at any time. You must pay us on demand any amount by which your Account's balance exceeds your Credit Limit. If we extend credit over your Credit Limit, we will not be obligated to do so again, and such extension will not result in any waiver of our rights under this paragraph.

**6. USING YOUR CARD:** You may use your Card: (1) to make purchases of goods or services at merchant establishments where the Card is accepted, and (2) to obtain cash advances (i.e., loans of money) at participating financial institutions. Each purchase and cash advance you obtain will reduce the available credit under your credit limit until it is repaid. Cash advances are limited to 25% of your assigned credit limit. Cash advances cannot exceed two transactions or more than $200.00 per day, as applicable. You promise to pay us, when due, the total amount of all purchases and cash advances, as well as all finance charges, and other fees and charges billed to your Card Account. You may not use your Card for any illegal purpose.

**7. AUTHORIZATION:** Merchants or banks may contact us on your behalf to obtain authorization for Card purchases or cash advances. You agree that we shall have no liability if: (a) any merchant or bank refuses to honor your Card, (b) operational difficulties prevent authorization of a transaction, (c) authorization is declined because your Account is overlimit or delinquent, or (d) credit has been restricted pursuant to any term of this Agreement.

**8. YOUR MONTHLY STATEMENT:** Your Account will be on a monthly billing cycle. We will send you a statement each month that there is activity or an outstanding balance on your Account. The statement itemizes your Account activity, including purchases, cash advances, fees, finance charges, other charges, and payments and credits posted during the billing period. The payment coupon portion of the statement will serve as your bill. When making payment, write your Account number on your check or money order and return the coupon with your payment. You should retain the remaining portion of your statement for your records. If the Bank offers, and you elect to receive, your monthly statement electronically, paper statements will not be mailed to you. You will be responsible for making your payments by the due date, either through the Bank's website or telephone, for which a fee may apply, or by mailing your payment to the appropriate address designated for receipt of payments by mail. Credit One Bank will not be responsible for processing delays or failure to process the payment to your Account if a payment sent by mail does not contain your Account number or is not accompanied by your payment coupon. Your payment will be credited to your Account, as of the date of receipt, if the payment is received by 5:00 p.m. Pacific Standard Time ("PST").

**9. ANNUAL MEMBERSHIP FEE:** The Annual Membership Fee for your Account in year one is $75.00 and will be billed to your Account when it is opened. The Annual Membership Fee for your Account beginning in year two is $99.00 and will be billed to your Account in monthly installments of $8.25 per month. The Annual Membership Fee will be billed to your Account as long as it remains open or, if your Account is closed by you or us, the Annual Membership Fee will continue to be charged until you pay your outstanding balance in full. The Annual Membership Fee is refundable as long as you cancel your Account and have not used your card for any Purchases or

2

Cash Advances and you have not made a payment. An Annual Membership Fee Notice, as required by regulation, will be provided to you at least once every 12 months. The Annual Membership Fee is imposed for providing services related to your Account, including but not limited to: the opportunity to use your card with participating merchants, providing renewal cards, providing availability of customer service representatives for assistance, providing credit information to credit reporting agencies, and providing the opportunity for additional credit.

**10. FINANCE CHARGES:** Your Card Account is subject to finance charges and the total Finance Charges in your monthly billing cycle are the sum of the Periodic Finance Charges, Transaction Finance Charges, and Credit Limit Increase Fees which are calculated as follows:

**(a) Periodic Finance Charges:** For purchases and cash advances, Credit Limit Increase Fees, Annual Membership Fees, Late Payment Fees and other fees and charges to your Account, the Periodic Finance Charge is calculated as follows: The **Annual Percentage Rate ("APR")** for Purchases and Cash Advances may vary and will be determined by adding **20.65%** to the U.S. Prime Rate appearing in the "Money Rates" section of any edition of *The Wall Street Journal* published on the 25th day of each month. If the *Journal* is not published on that day, then the Prime Rate on the next business day will be used. If the Prime Rate changes, the new rate will take effect on the first day of the following month. The new rate will be applied to all balances on the Account. The estimated **APR** for all balances is 3.25% plus 20.65%, **23.90%** (corresponding monthly periodic rate of 1.9916%). The **APR** will never be greater than **29.90%** (corresponding monthly periodic rate of 2.4916%). The most recent Annual Percentage Rate was disclosed to you when you received your credit card. There is a minimum **Finance Charge** of **$1.00** for any billing cycle in which a Finance Charge is due. Periodic Finance Charges will be assessed from the date the purchase, cash advance, fee or charge is posted to your Account until the date it is paid in full, and will be calculated by applying the monthly periodic rate to the "average daily balance" of your Account. To get the "average daily balance," we take the beginning balance of your Account each day, add any new purchases, cash advances, fees and charges, and subtract any payments or credits and unpaid periodic Finance Charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle, and divide the total by the number of days in the billing cycle. This gives us the "average daily balance." Periodic Finance Charges will be assessed on all "average daily balances" until paid in full. All purchases, cash advances, fees or charges accrue finance charges starting on the date of posting, even if the new balance from your previous statement was paid in full or even if that new balance was zero.

**(b) Cash Advance Transaction Finance Charges:** The Cash Advance Transaction Fee will be waived for the first 12 months after Account opening. After the first 12 months, each time you obtain a new cash advance, we will impose a Transaction Fee **Finance Charge** of **8%** of the amount advanced or **$5.00**, whichever is greater.

**(c) Credit Limit Increase Finance Charges:** A fee may be imposed for Credit Limit increases, as described under the "Credit Limit Increase Requests" section of this Agreement.

**(d) Foreign Transaction Finance Charges:** Each time you make a foreign transaction, we may impose a Transaction Fee **Finance Charge** of **3%** of the amount charged or **$1.00**, whichever is greater. For additional information, see the "Foreign Transaction" section of this Agreement.

**(e) Fees Treated as Principal:** For purposes of Finance Charge calculation, Credit Limit Increase Fees, Annual Membership Fees, Late Payment Charges, and other charges, except cash advance fees, will be treated like purchase transactions, posted as principal, and accrue Finance Charges like purchases.

**(f) Periodic Statement Annual Percentage Rate:** If a finance charge imposed is required to be included in calculating the Annual Percentage Rate under the Federal Truth-in-Lending Act, the Annual Percentage Rate disclosed on your statement may exceed the corresponding Annual Percentage Rate disclosed in this Agreement for any billing period in which such finance charge is posted to your Account.

**11. LATE PAYMENT CHARGES:** If at least the Amount Due This Period (less any Late Payment Fee for the current billing cycle) and Amount Past Due are not received by 5:00 p.m. PST on the Payment Due Date shown on your statement, a Late Payment Fee of up to $35.00 will be charged to your Account.

**12. OTHER CHARGES:** In addition to the fees and charges described above, other charges that may be imposed on your Account include the following: (1) Returned Payment Fee: If a payment is returned for any reason, a Returned Payment Fee of up to $35.00 will be charged to your Account; (2) Duplicate Statement Fee: If you request a duplicate copy of a monthly statement, you will be charged a fee of up to $10.00 for each statement copy requested; (3) Sales Slip Request Fee: If you request a copy of a sales slip, for any purpose other than to resolve a dispute about the charges on your Account, you will be charged a fee of $6.00 for each sales slip copy requested; (4) Co-applicant Fee: To add an additional Cardholder to the Account after it is opened, an application must be submitted to Credit One Bank. The co-applicant fee in effect at the time of such application will be required; and (5) Replacement Card Fee: If your Card is lost, stolen or destroyed and you request a replacement, a Replacement Card Fee of $25.00 may be charged to your Account.

**13. MINIMUM PAYMENTS:** (a) You agree to pay either the entire outstanding balance or the Minimum Payment Due, as shown on your monthly statement. The Minimum Payment Due is 5% of your outstanding balance, rounded up to the next whole dollar, or $25.00, whichever is greater, plus any Late Payment Fee for the current billing cycle, and any Past Due Amount. For your Account to be considered current and to avoid a Late Payment Fee, you must pay at least the Amount Due This Period (less any Late Payment Fee for the current billing cycle) and the Past Due Amount by the Payment Due Date shown on your statement. (b) Certain other service fees may be added to your minimum payment amount. When you sign up for such services, you will be notified if a fee for the service will be imposed and if it is required to be added to your minimum payment.

**14. SMALL BALANCES:** As it is uneconomical for both you and us to process payments or maintain credits that are $1.00 or less in amount, you agree as follows: (1) In any billing cycle in which you have had no transactions and your New Balance on the billing date is $1.00 or less, the balance will be rounded to zero and you will not receive a bill for this amount. (2) In the event that you have a credit balance of $1.00 or less for two consecutive billing cycles, the balance will be rounded to zero and you will not receive a refund of this amount.

**15. MAKING PAYMENTS:** Your payments must be made in US currency only through paper or electronic format not to include wire transfer. Do not send cash through the mail, as Credit One Bank cannot be responsible for cash lost in the mailing process. To the extent that a payment reduces the principal amount outstanding on your Card Account, new credit will be available (subject to your credit limit), but only after 12 calendar days after our receipt of the payment. To insure prompt posting of payments sent through the mail, your payments must be sent to the address indicated on your statement and must be received by 5:00 p.m. PST. There will be a delay in posting payments to your Account for payments not sent to the address shown on your statement. You agree that we may process any item delivered to us for payment on the day it is received, and that we are not required to honor special instructions or restrictive endorsements. As described above, if any payment is received that does not contain your Account number or is not accompanied by your payment coupon, Credit One Bank will not be liable for processing delays or failure to process the payment to your Account. Crediting of such payments may be delayed up to five business days of receipt.

**(a) Treatment of Check Payments:** When you send us a personal check, you authorize us to process the check electronically. In addition, if a check we process in paper form is returned to us by your bank unpaid, we may re-present the returned check electronically. We use information from your check to electronically withdraw funds from your account. Funds may be withdrawn as soon as the business day we receive your payment. Electronically processed checks (and checks re-presented electronically) are not returned to you by your bank, however Credit One Bank retains an image of your electronically processed check in accordance with regulatory record retention requirements. Credit One Bank will provide you with a copy of your electronically processed check(s) upon request.

**16. POSTDATED CHECKS:** You agree that we need not examine any payment check to confirm that it is not postdated, and that we may deposit any postdated check for payment to us on the day we receive it.

**17. IRREGULAR PAYMENTS:** Any payment submitted in offer of settlement of a disputed debt, including any check containing a notation such as "paid in full," must be sent to the following address: Credit One Bank, P.O. Box 95516, Las Vegas, NV 89193-5516. If you do not forward any check or other payment marked "paid in full" to the above address, we can accept late payments or partial payments, or checks or other payments marked with similar notations, without losing any of our rights under this Agreement, including our right to seek payment of the full balance of your Account.

**18. VERIFICATION OF INFORMATION: (a) Credit Information:** You authorize us to obtain and/or use information about you from third parties and credit reporting agencies to: 1) verify your identity and/or conduct investigative inquiries; 2) determine your income and credit eligibility; 3) review your Account and provide renewal of credit; 4) verify your current credit standing in order to present future credit line increases or decreases; 5) qualify you for and present additional lines of credit or other offers; and 6) collect amounts owing on your Account. California residents, you agree to waive your right to keep confidential information under Section 1808.21 of the California Vehicle Code from us. **(b) Reporting Information:** We may furnish information concerning your Account or credit file to consumer reporting agencies and others who may properly receive that information. However, we are not obligated to release such information to anyone unless we are required to do so by law or a proper Power of Attorney is provided. **(c) Telephone Monitoring:** To be sure that your inquiries are handled properly, courteously and accurately, some of the telephone calls between our employees and our customers are monitored by supervisory or management personnel. Recordings may be made of such calls for your protection.

**19. COMMUNICATIONS:** You expressly authorize Credit One Bank or its agents to contact you at any phone number (including mobile, cellular/wireless, or similar devices) or email address you provide at anytime, for any lawful purpose. The ways in which we may contact you include live operator, automatic telephone dialing systems (auto-dialer), prerecorded message, text message or email. Phone numbers and email addresses you provide include those you give to us, those from which you contact us or which we obtain through other means. Such lawful purposes include, but are not limited to: obtaining information; account transactions or servicing related matters; suspected fraud or identity theft; collection on the Account; and providing information about special products and services. You agree to pay any fee(s) or charge(s) that you may incur for incoming communications from us or outgoing communications to us, to or from any such number or email address, without reimbursement from us.

**20. DEFAULT:** You will be in default under this Agreement if any of the following events occur: (1) you exceed your assigned credit limit; (2) you fail to make any required payment when due; (3) you die, become insolvent, file a petition in bankruptcy or similar proceeding, or are adjudged bankrupt; (4) you provide any false or misleading financial or biographical information to Credit One Bank; (5) any representation or warranty you make to Credit One Bank is false or breached; (6) a guardian, conservator, receiver, custodian or trustee is appointed for you; (7) you are generally not paying your debts as they become due; (8) the Bank reasonably believes there has been a material adverse change in your financial condition; or (9) you violate any term of this Agreement. Upon your default, Credit One Bank can close or refuse to renew your Account, demand the return of your card(s), declare your entire balance immediately due and payable, and initiate collection activity, all without prior notice or demand. You promise to pay any collection costs and attorneys' fees, including our in-house attorneys' costs, that Credit One Bank incurs as a result of your default.

**21. TERMINATION OF ACCOUNT:** This Account may be terminated by you at any time by giving notice in writing to Credit One Bank. Credit One Bank may terminate the Account and demand payment in full if you are in default under any of the terms and conditions of this Agreement, or if there is a dispute between the Cardholders as described elsewhere in this Agreement, or if a Cardholder requests termination of the Account privileges of any other Cardholder, or without cause if Credit One Bank deems termination of the Account to be in its best interests. In the event of voluntary or involuntary Account termination, all credit privileges under the Account and Credit One Bank membership will be terminated immediately. Once we receive your final payment in full, processing of Account closure may be delayed up to 45 days, in order to ensure that all outstanding credit card charges have been received from merchants. No later than the end of the delay period Credit One Bank will send you a check for the credit balance remaining on the Card Account, if any. Credit One Bank may require the return of any Credit Cards before issuing a refund check. However, when your Account is closed, if there is: (1) a debit balance of $1.00 or less, that balance will be rounded to zero and you will not be required to pay this amount; or (2) a credit balance of $1.00 or less, that balance will be rounded to zero and this amount will not be refunded to you. The rounding to zero may occur after your closing statement cycles, and you may not receive a statement reflecting the rounding.

**22. SECURITY:** This is an unsecured Account, and Credit One Bank retains no security interest in your real or personal property to secure payment of your Card Account.

**23. CARD OWNERSHIP AND ACCEPTANCE:** Any credit card or other credit instrument issued to you remains the property of Credit One Bank and must be surrendered to Credit One Bank or its agent on demand. We are not liable for the refusal of Credit One Bank or any other party to honor your Card for any reason. All Cards have an expiration date. We have the right not to renew your Card for any reason.

**24. FOREIGN TRANSACTIONS:** If you make a transaction at a merchant that settles in a currency other than U.S. dollars, MasterCard Worldwide or Visa Inc. will convert that charge into a U.S. Dollar amount. That conversion will be done at a rate selected by MasterCard or Visa from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate MasterCard or Visa itself receives, or the government-mandated rate in effect for the applicable central processing date. The currency conversion rate used on the processing date may differ from the rate that would have been used on the purchase date or on the date the transaction is posted to your Account. You agree to pay the converted amount, including any charges for the conversion that may be imposed as described above. A fee may be imposed for foreign transactions as described under the Finance Charge section of this Agreement.

**25. LOST OR STOLEN CARDS:** You may be liable for unauthorized use of your Card. If your Card is lost or stolen or you suspect that someone is using your Card without your permission, you should immediately notify Credit One Bank's Bank Card Center. You can call **(877) 825-3242**. You can also notify us in writing at **Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872**. You will not be liable for any unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft or possible unauthorized use. In any event, your liability for unauthorized use will not exceed $50. If you allow someone to use your Card to make charges to your Card Account, you can terminate this user's authority by retrieving the Card and returning it to us. Until you do, you remain liable for any use by the authorized user. You understand and agree that this Card Account may be replaced with a substitute Account if a credit card for this Account is lost or stolen, or in the event unauthorized use of the Account is reported. All terms and conditions of this Agreement and the application shall apply to any substitute Account.

**26. CREDIT LIMIT INCREASE REQUESTS:** Credit Limit Increase requests must be made in accordance with procedures established from time to time by Credit One Bank. A fee may be imposed for credit limit increases. The fee imposed will be a **Finance Charge** of between **$0.00** and **$49.00**, depending on how long your Account has been established and your credit history with us and others. We will advise you which fee is applicable to your Account at the time you apply for a credit limit increase. Credit limit increase requests are subject to the same credit process as your original application, including review of credit bureau information. You will be notified by mail if your request for an increase is declined. Approval will be indicated in the form of a credit limit increase on your Card Account statement. For information on Credit One Bank's procedure for applying for a credit limit increase, contact us at **(877) 825-3242**.

**27. WAIVER OF RIGHTS:** If we waive any of our rights under this Agreement, we will not be obligated to do so again.

**28. CUSTOMER PRIVACY:** The privacy policy for Credit One Bank is provided separately in accordance with applicable law.

**29. GOVERNING LAW:** This Agreement is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence.

**30. ARBITRATION AGREEMENT:** The Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement.

<u>YOUR BILLING RIGHTS - KEEP THIS DOCUMENT FOR FUTURE USE</u>

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

**What To Do If You Find a Mistake on Your Statement**
If you think there is an error on your statement, write to us at: **Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872.**
In your letter, give us the following information:
· *Account information:* Your name and account number.
· *Dollar amount:* The dollar amount of the suspected error.
· *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
You must contact us:
· Within 60 days after the error appeared on your statement.
· At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.
You must notify us of any potential errors *in writing.* You may call us at **877-825-3242**, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**
When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.
While we investigate whether or not there has been an error:
· We cannot try to collect the amount in question, or report you as delinquent on that amount.
· The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
· While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
· We can apply any unpaid amount against your credit limit.
After we finish our investigation, one of two things will happen:
· *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.
· *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.
If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us. If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**
If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase. To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase. If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at:
**Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872.**
While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

<u>ARBITRATION</u>

**PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

*Agreement to Arbitrate:*
You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. ¤1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.

*Claims Covered:*
· Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your account; services or benefits programs relating to your account, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) your account, goods or services financed under your account, or the terms of financing; the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters relating to your account, a prior related account or the resulting relationships between you and us. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.
· Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a

5

co-applicant or authorized user of your account, your agent, representative or heirs, or a trustee in bankruptcy. Similarly, Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors (and the employees, officers and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made.

· Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief). Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.

· Claims subject to arbitration include Claims that arose in the past, or arise in the present or future. Claims are subject to arbitration whether they are made independently or with other claims in proceedings involving you, us or others. Claims subject to arbitration include Claims that are made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any Claim(s) advanced in the lawsuit by any other party or parties. Claims subject to arbitration include Claims made as part of a class action or other representative action, and the arbitration of such Claims must proceed on an individual basis.

· If you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the Claim in any litigation, whether as a class action, private attorney general action, other representative action or otherwise.

· Claims are not subject to arbitration if they are filed by you or us in a small claims court, so long as the matter remains in such court and advances only an individual claim for relief.

**Initiation of Arbitration:** The party filing an arbitration must choose an arbitration administrator. Arbitration administrators are independent from us, and you must follow their rules and procedures for initiating and pursuing an arbitration. If you initiate the arbitration, you must also notify us in writing at Credit One Bank, P.O. Box 95516, Las Vegas, NV 89193-5516. If we initiate the arbitration, we will notify you in writing at your then current billing address or (if your account is closed) the last address we have on file for you. Any arbitration hearing that you attend will be held at a place chosen by the arbitrator or arbitration administrator in the same city as the U.S. District Court closest to your billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of the arbitration administrators, and other related materials, including forms and instructions for initiating an arbitration, by contacting the arbitration administrators as follows:

**American Arbitration Association**
335 Madison Avenue, Floor 10
New York, NY  10017-4605
Web Site:  www.adr.org

**JAMS**
1920 Main Street, Suite 300
Irvine, CA  92614-7279
Web Site:  www.jamsadr.com

**Procedures and Law Applicable in Arbitration:** A single arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator and will be neutral. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless this arbitration provision is inconsistent with those procedures and rules, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. The arbitrator will take reasonable steps to protect customer account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of, any person who is not a party to the proceeding. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**Costs:** If we file the arbitration, we will pay the initial filing fee. If you file the arbitration, you will pay the initial filing fee, unless you seek and qualify for a fee waiver under the applicable rules of the arbitration administrator. We will reimburse you for the initial filing fee if you paid it and you prevail. If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first day of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is other good reason for requiring us to do so, or we determine there is good cause for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party.

**No Consolidation or Joinder of Parties:** All parties to the arbitration must be individually named. Claims by persons other than individually named parties shall not be raised or determined. Notwithstanding anything else that may be in this arbitration provision or Agreement, no class action, private attorney general action or other representative action may be pursued in arbitration, nor may such action be pursued in court if any party has elected arbitration. Unless consented to by all parties to the arbitration, Claims of two or more persons may not be joined, consolidated or otherwise brought together in the same arbitration (unless those persons are applicants, co-applicants or authorized users on a single account and/or related accounts or parties to a single transaction or related transactions); this is so whether or not the Claims (or any interest in the Claims) may have been assigned.

**Enforcement, Finality, Appeals:** You or we may bring an action, including a summary or expedited motion, to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Failure or forbearance to enforce this arbitration provision at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. Within fifteen days after an award by the single arbitrator, any party may appeal the award by requesting in writing a new arbitration before a panel of three neutral arbitrators designated by the same arbitration administrator. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel, or an award by a single arbitrator after fifteen days has passed, shall be final and binding on the parties, subject to judicial review that may be permitted under the FAA. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, nor on the resolution of any other dispute or controversy.

**Severability, Survival:** This arbitration provision shall survive: (i) termination or changes in the Agreement, the account and the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer or assignment of your account, or any amounts owed on your account, to any other person. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

© 2010 Credit One Bank, N.A. All rights reserved.
Credit One® and Credit One Bank® are federally registered trademarks.

C50-00075 11/10                                    **M-100846 (11-10)**

## IMPORTANT NOTICE
### CHANGES IN TERMS OF YOUR
### VISA/MASTERCARD CREDIT CARD ACCOUNT

**Please retain this document for your records**

Credit One Bank, N.A. (the "Bank") is making important changes to the VISA/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement (the "Agreement") that governs your credit card account (the "Account") with the Bank. All of these changes will take effect starting with your billing cycle that begins in January 2016. Except for these changes, all existing terms and conditions in the Agreement remain in effect. Please keep this notice with your Agreement.

### OTHER CHARGES

The changes to the Other Charges section includes *added* language:

(5) Replacement Card Fee: If you request a replacement card, a Replacement Card Fee of up to $25.00 may be charged to your Account.

### COMMUNICATIONS

*The existing Communications section has been substituted and includes the new Indemnification, Revocation and Online Account Communications language:*

**(a)** We are providing express written permission and consent authorizing Credit One Bank and its agents to contact you at any phone number (including mobile, cellular/wireless, or similar devices) or email address you provide at any time, for any lawful purpose. The ways in which we may contact you include live operator, automatic telephone dialing systems (auto-dialer), prerecorded message, text/SMS message or email. These numbers and email addresses you provide include those you give to us, those from which you contact us or which we obtain through other means. Such lawful purposes include, but are not limited to: obtaining information; activation of the card for verification and identification purposes; account transactions or servicing related matters; suspected fraud or identity theft; collection on the Account; and providing information about special products and services. You agree to pay any fee(s) or charge(s) that you may incur for receiving communications from us or outgoing communications to us, to or from any such number or email address, without reimbursement from us. **(b) INDEMNIFICATION:** If you provide telephone number(s) for which you are not the subscriber, you understand that you shall indemnify us for any costs and expenses, including reasonable attorneys' fees, incurred as a result of us contacting or attempting to contact you at the number(s). **(c) COMMUNICATION REVOCATION:** If you do not want to receive communications as described in the previous paragraph, **you must:** (i) provide us with written notice revoking your prior consent, **(ii)** in that written notice, you must include your name, mailing address, and the last four digits of your Account number; **(iii)** advise whether you would like communications to cease via mail, telephone number(s), email, text/SMS, or cease in all forms; **(iv)** if you are requesting communications to

cease via telephone number(s) and/or email, please provide the specific phone number(s) and email address; **(v)** mail this written notice to us at the following address: Credit One Bank Customer Service, P.O. Box 98850, Las Vegas, NV 89193-8850. **(d) ONLINE ACCOUNT COMMUNICATIONS:** If you do not want to receive communications previously selected as part of your online account, **you must** update your preferences under the "Email and Text Notifications" section to remove these notifications. We cannot remove these online account notifications for you.

### TERMINATION OF ACCOUNT

*The existing Termination of Account section has been substituted to add language that upon closure, the Annual Membership Fee will continue to be charged to your outstanding balance until paid in full. It also deletes references to the closure delay period of up to 45 days.*

This Account may be terminated by you at any time by giving notice in writing to Credit One Bank. If your Account is closed by you or us, the Annual Membership Fee will continue to be charged until you pay your outstanding balance in full. Credit One Bank may terminate the Account and demand payment in full if you are in default under any of the terms and conditions of this Agreement, or if there is a dispute between the Cardholders as described elsewhere in this Agreement, or if a Cardholder requests termination of the Account privileges of any other Cardholder, or without cause if Credit One Bank deems termination of the Account to be in its best interests. In the event of voluntary or involuntary Account termination, all credit privileges under the Account and Credit One Bank membership will be terminated immediately. However, when your Account is closed, if there is: (1) a debit balance of $1.00 or less, that balance will be rounded to zero and you will not be required to pay this amount; or (2) a credit balance of $1.00 or less, that balance will be rounded to zero and this amount will not be refunded to us. The rounding to zero may occur after your closing statement cycles, and you may not receive a statement reflecting the rounding.

### ACCESS TO CREDIT SCORE

*The following language has been added as a new section to your Agreement:*

To access your free monthly Credit Score that is included with your Account you will need to: (1) Register for Online Account Access at: www.CreditOneBank.com. (2) Accept the online Terms of Use / Credit Score Authorization Agreement associated with receiving your Credit Score. Credit Score availability can take up to 60 days from your online enrollment date. Occasionally, systems or other constraints may prevent us from updating your Credit Score in a timely manner. This service is subject to change or cancellation without notice.

### CASH BACK REWARDS PROGRAM

*The existing Gas Rewards Program has been substituted with the new Cash Back Rewards Program. The Cash Back Rewards Program provides cash back in the form of an automatic statement credit equal to 1% of "eligible net purchases" (as*

*defined below) made with your Account. The Cash Back Rewards Program now includes "rewards for groceries."*

This Credit One Cash Back Rewards Program (the "Program") supplements the Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement (collectively, the "Cardholder Agreement") you received with your credit card account issued by Credit One Bank, N.A. (the "Account"). In this Program, the words "we," "us," "our" and "Credit One" refer to Credit One Bank, N.A. and the words "you" and "your" refer to all persons, jointly and severally, authorized to use the Account and thereby participate in the Program. By using your Account, you agree to participate in the Program and to the terms and conditions regarding the Program contained herein. In the event of any conflict between the Cardholder Agreement and this Program with respect to matters relating to the Program, this Program shall control.

**EARNING CASH BACK REWARDS:** You will receive cash back in the form of an automatic statement credit equal to 1% of "eligible net purchases" (as defined below) made with your Account. We will post a statement credit to your Account within seven days of the end of the month equal to 1% of "eligible net purchases" made with your Account from the 27th of the previous month to the 26th of the current month. If your Account is in default, as defined within your Cardholder Agreement at the time the credit is to be posted, you WILL NOT receive the credit. The eligible credit(s) will show on your billing statement as "Credit One Rewards Credit."

**ELIGIBLE NET PURCHASES:** Eligible net purchases are purchases of gasoline from merchants using Standard Industrial Classification Codes ("SIC Codes") 5172, 5541, and 5542, and purchases of groceries from merchants using SIC Codes 5411, 5422, and 5499, minus any returns or other credits using these same SIC Codes. Although a merchant or the items that it sells may appear to fit the gas or grocery reward categories, the merchant may not have or use an SIC Code that is included in this Program, and purchases with that merchant will not qualify for rewards. You WILL NOT earn rewards if a merchant does not submit the purchase using an SIC Code that we have designated for gas and grocery rewards. A merchant with more than one location may submit purchases using different SIC Codes, including SIC Codes that do not qualify under this Program. This means that purchases from the same merchant at a different location may result in no reward. Purchases from the following types of merchants are not eligible for gas rewards: oil, propane, and home heating companies. Purchases from the following merchants are not eligible for grocery rewards: Target, Walmart, K-Mart, Kaufland, Costco, and Sam's Club.

**PROGRAM RESTRICTIONS:** You will receive an automatic rewards credit on each statement that has at least one eligible net purchase. Automatic statement credits for rewards will reduce the balance on your Account but will not count as payments. You will still be required to pay at least the Minimum Payment Due as shown on your billing statement each month. You WILL NOT earn rewards for gas or grocery purchases made while your Account is in default as defined within your Cardholder Agreement. Disputed or unauthorized purchases/fraudulent transactions and illegal transactions do

not earn rewards, unless otherwise specified. This Program excludes Accounts already enrolled in different Credit One rewards programs.

**AMENDMENTS:** The Program may be amended (added to, modified or deleted) by us at any time, including without limitation amendments of eligible SIC Codes without prior notice and will take effect immediately. The current version of this Program may be found at www.CreditOneBank.com on the Cardholder Agreement section of the Customer Service tab. Any revisions may affect your ability to earn rewards.

**TERMINATION:** We may suspend or terminate the Program or your participation in the Program at any time without prior notice. In such event, we will evaluate your Account for any eligible gas or grocery rewards as of the Program termination date. Provided that you meet all of the other Program Restrictions listed above at that time, you will receive a distribution of the rewards earned during the current billing period in the form of a statement credit.

**LIMITED LIABILITY:** Unless otherwise required by law, this Program, or our Cardholder Agreement with you, we will not be liable to you or anyone making a claim on your behalf, in connection with: (1) any change or termination of the Program; (2) any loss, damage, expense or inconvenience caused by any occurrence outside of our control; (3) any taxes that you incur as a result of receiving rewards, payment of which taxes will be your responsibility; (4) any merchandise or services you purchase, or for any direct, indirect or consequential damages with respect to the use of your Account. In any event, any liability that Credit One may have to you in connection with the Program shall be limited to the amount of any rewards you have earned in this Program. The Program and rewards are void or limited where prohibited or restricted, respectively, by federal, state or local law.

### ARBITRATION AGREEMENT

*The existing Arbitration Agreement has been substituted to remove the appeals provision, and terms involving class arbitration, confidentiality, costs, severability and what claims are not subject to arbitration have been modified.*

**PLEASE READ THIS ARBITRATION AGREEMENT OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

*Agreement to Arbitrate:*

You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This

Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing the Card Agreement.

*Claims Covered:*

· Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your Account; any disclosures or other documents or communications relating to your Account; any transactions or attempted transactions involving your Account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your Account; services or benefits programs relating to your Account, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) your Account, goods or services financed under your Account, or the terms of financing; the application, enforceability or interpretation of the Card Agreement (except for this Arbitration Agreement); and any other matters relating to your Account, a prior related Account or the resulting relationships between you and us. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this Arbitration Agreement in the broadest way the law will allow it to be enforced.

· Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your Account, your agent, representative or heirs, or a trustee in bankruptcy. Similarly, Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors (and the employees, officers and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made, and Claims brought against any other person or entity named as a defendant or respondent in a Claim brought by you against us.

· Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief). Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.

· Claims subject to arbitration include Claims that arose in the past, or arise in the present or future. Claims are subject to arbitration whether they are made independently or with other claims in proceedings involving you, us or others.

Claims subject to arbitration include Claims that are made as counterclaims (including but not limited to counterclaims by us to collect amounts in default from you), cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any Claim(s) advanced in the lawsuit by any other party or parties.

· As set forth below, Claims made as part of a class action, private attorney general action or other representative action are subject to arbitration but must be arbitrated on an individual basis. If a Claim is arbitrated, neither you nor we will have the right to participate in a class action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member. Thus, if you or we require arbitration of a particular Claim, neither you nor we may pursue the Claim in any court litigation, whether as a class action, private attorney general action, other representative action or otherwise, and the arbitration of such Claim must proceed on an individual basis.

**Claims Not Covered:**

· Claims are not subject to arbitration if they are filed by you or us in a small claims court or your state's equivalent court, so long as the matter remains in such court and advances only an individual claim for relief. Also, disputes about the validity, enforceability, coverage or scope of this Arbitration Agreement or any part thereof are not subject to arbitration and are for a court to decide. But disputes about the application, enforceability or interpretation of the Card Agreement as a whole are subject to arbitration and are for the arbitrator to decide.

**Initiation of Arbitration:** The party filing arbitration must choose an arbitration administrator. Arbitration administrators are independent from us, and you must follow their rules and procedures for initiating and pursuing arbitration. If you initiate the arbitration, you must also notify us in writing at Credit One Bank, P.O. Box 95516, Las Vegas, NV 89193-5516. If we initiate the arbitration, we will notify you in writing at your then current billing address or (if your Account is closed) the last address we have on file for you. Any arbitration hearing that you attend will be held at a place chosen by the arbitrator or arbitration administrator in the same city as the U.S. District Court closest to your billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of the arbitration administrators, and other related materials, including forms and instructions for initiating arbitration, by contacting the arbitration administrators as follows:

| **American Arbitration Association ("AAA")** | **JAMS** |
| --- | --- |
| 335 Madison Avenue, Floor 10 | 1920 Main Street, Suite 300 |
| New York, NY 10017-4605 | Irvine, CA 92614-7279 |
| Web Site: www.adr.org | Web Site: www.jamsadr.com |

If neither AAA nor JAMS is willing or able to serve, and you and we are unable to agree on a substitute, a court with jurisdiction will select the administrator or arbitrator.

**Procedures and Law Applicable in Arbitration:** A single arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years' experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator and will be neutral. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless this Arbitration Agreement is inconsistent with those procedures and rules, in which case this Arbitration Agreement will prevail. This Arbitration Agreement will also prevail to the extent that it is inconsistent with the Card Agreement. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law, consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. You and we agree to keep the details of the arbitration, including communications in any medium, testimony, documents and the award, confidential unless otherwise required by applicable law or the administrator's rules. The arbitrator will have the power to award to a party any damages or other relief provided for an individual claim under applicable law (including constitutional limits that would apply in court), and will not have the power to award relief to, against, or for the benefit of, any person who is not a party to the proceeding. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**Costs:** If we file the arbitration, we will pay the initial filing fee. If you file the arbitration, you will pay your share of the initial filing fee, unless you seek and qualify for a fee waiver under the applicable rules of the arbitration administrator. We will reimburse you for your share of the initial filing fee if you paid it and you should. Except as set forth below, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first day of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so, or we determine there is good cause for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, except that (a) the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party, (b) the arbitrator shall require you to pay us collection costs and attorneys' fees, including our in-house attorneys' costs, that we incur as a result of your default, as set forth in the Card Agreement and (c) the arbitrator may assess attorneys' fees and costs against a party upon a showing by the other party that the first party's claim(s) or conduct was frivolous or pursued in bad faith or solely for purpose of multiplying the

arbitration proceedings unreasonably or vexatiously.

**No Class Arbitration or Consolidation or Joinder of Parties:** All parties to the arbitration must be individually named. Claims by persons other than individually named parties shall not be raised or determined. Notwithstanding anything else that may be in this Arbitration Agreement or the Card Agreement, no class action, private attorney general action or other representative action may be pursued in arbitration, nor may such action be pursued in court if any party has elected arbitration. No arbitrator shall have the authority to conduct any arbitration in violation of this Arbitration Agreement or to issue any relief that applies to any person or entity other than you or us individually. Unless consented to by all parties to the arbitration, Claims of two or more persons may not be joined, consolidated or otherwise brought together in the same arbitration (unless those persons are applicants, co-applicants or authorized users on a single Account and/or related Accounts or parties to a single transaction or related transactions); this is so whether or not the Claims (or any interest in the Claims) may have been assigned. Provided, however, that nothing in this Arbitration Agreement regarding consolidation and joinder is intended to impair a respondent's right to assert a counterclaim against the claimant pursuant to the administrator's rules.

**Enforcement, Finality:** You or we may bring an action, including a summary or expedited motion, to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Failure or forbearance to enforce this Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. We will not amend this Arbitration Agreement in a manner that adversely affects your rights without giving you prior notice.

An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction and shall be subject to judicial review only as provided in the FAA. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, nor on the resolution of any other dispute or controversy.

**Severability, Survival:** This Arbitration Agreement shall survive: (i) termination or changes in the Card Agreement, the Account and the relationship between you and us concerning the Account; (ii) the bankruptcy of any party, to the extent permitted by applicable bankruptcy law; and (iii) any transfer or assignment of your Account, or any amounts owed on your Account, to any other person. If any part of this Arbitration Agreement other than the section titled *"No Class Arbitration or Consolidation or Joinder of Parties"* is declared

unenforceable, the remainder shall be enforceable. If the section titled *"No Class Arbitration or Consolidation or Joinder of Parties"* is declared unenforceable in a proceeding between you and us, without impairing the right to appeal such decision, this entire Arbitration Agreement (except for this sentence) shall be null and void in such proceeding.



Dear Customer,

Credit One Bank, N.A. appreciates your business as a cardholder and hopes you are enjoying both the use and benefits of your credit card. We want you to be aware of changes we are making to your Account. These changes reflect a general adjustment in our credit card program and are not a result of your personal history with us or your credit score.

These important changes apply to your existing Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement (the "Agreement"). The enclosed Change in Terms Notice includes changes to the following sections of the Agreement: existing Other Charges, Communications, Termination of Account, Rewards Program and Arbitration and the new Access to Credit Score.

These changes will take effect starting with your **January 2016** statement.

Except for these changes, all existing terms and conditions in the Agreement remain in effect.

Thank you for choosing Credit One Bank.

Sincerely,

J. Christopher
Senior Vice President

© 2015 Credit One Bank, N.A. All rights reserved.
Credit One', Credit One Bank' and corresponding logos are federally registered trademarks.   C50-00352 08/15

www.CreditOneBank.com